THE CITY OF CHICAGO *et al.*

*v.*

MAX L. BREDE.

*Opinion filed December 20, 1905.*

1. CONSTITUTIONAL LAW—*section 9 of article 9 of constitution construed.* Section 9 of article 9 of the constitution, authorizing the legislature to empower cities, towns and villages to make local improvements by special assessment or by special taxation of contiguous property, "or otherwise," means only that such municipalities might be authorized to make local improvements by special assessment, special taxation or general taxation.

2. MUNICIPAL CORPORATIONS—*city has no power to change fixed plan for paying for improvement.* If an ordinance for a local improvement provides that the same shall be paid for by special assessment, the assessment is levied, the work completed and bonds issued, the city has no power to afterwards change the method of payment.

3. SAME—*a city has no power to purchase improvement bonds.* A city has no power to purchase special assessment bonds, coupons or vouchers out of moneys derived from miscellaneous sources, where there is a delay in the collection of the corresponding special assessment fund from which the respective bonds, coupons or vouchers are to be paid, and reimburse itself by paying such bonds, etc., out of the special assessment when collected.

4. SAME—*city cannot make itself liable for special assessment bonds.* In view of the express provisions of the Local Improvement act of 1897, a city is powerless to make itself liable, by ordinance, for special assessment bonds, vouchers or interest.

APPEAL from the Appellate Court for the First District;— heard in that court on appeal from the Circuit Court of Cook county; the Hon. MURRAY F. TULEY, Judge, presiding.

The appellee filed his bill in the circuit court of Cook county against appellants to enjoin the expenditure of $150,-000 for the year 1905 by the board of local improvements for the purchase of improvement bonds issued upon special assessments. The bill alleged that pursuant to the Local Improvement act of 1897 the city of Chicago made many local improvements and issued bonds from time to time for the

purpose of paying therefor, amounting to many hundreds of thousands of dollars, which are known as special assessment or improvement bonds, and which state upon their face that they are payable solely out of the funds collected by special assessment. On April 9, 1903, an ordinance was passed authorizing the creation of a special fund, to be known as the "improvement bond fund," to be used for the purchase of improvement bonds, coupons and vouchers issued since July 1, 1897, when the respective funds against which the bonds had been issued had been exhausted and deficiencies existed on account of delays in the collection of the special assessment. The bonds thus purchased were to be deposited with the comptroller as a part of the fund, to be reimbursed by the payment of the bonds and interest when the corresponding special assessment had been collected and the deficiency made good. During the years 1903 and 1904 appropriations to the amount of $50,000 for each year were made from miscellaneous receipts, and in the year 1905 $150,000 was appropriated for the same purpose. The bill alleges that the payment of said bonds by the said city was an illegal diversion of the funds belonging to the city, raised by taxation, and would diminish the funds in the city treasury applicable to the future legitimate expenses and appropriations of said city for permanent improvements. The prayer was for an injunction to restrain such expenditures.

The answer of appellants alleged that the finance committee of the city council, after a thorough investigation of the outstanding special assessment accounts, found that $150,000 would be sufficient to purchase special assessment bonds and coupons liable to be temporarily defaulted by reason of delay in the collection of assessments, and that the ultimate loss would not exceed one-half of one per cent thereof; that the fund provided by ordinance was not used for the payment of said local improvement bonds, coupons and interest, but that it was merely used to purchase such of said paper as was in danger of being defaulted, and that such

218—34

purchased paper was placed in the fund in lieu of the money, and the fund was reimbursed when the special assessment had been collected; that the city of Chicago is interested in maintaining the commercial integrity of the bonds, and may, as a matter of policy, in its discretion, in order to preserve its credit, purchase the bonds from its general fund or from moneys derived from other sources than taxation and hold the same until the special assessment is collected, and may then pay the bonds out of the special assessment fund when the same is so replenished.

The circuit court granted an injunction according to the prayer of the bill, and by agreement the hearing upon that motion was taken as a final hearing of the cause, and a final decree entered finding the equities in favor of the complainant and making the injunction perpetual. The Appellate Court has affirmed the decree of the circuit court, and a further appeal has been prosecuted to this court.

ROBERT REDFIELD, and FRANK JOHNSTON, Jr., (JAMES H. LEWIS, Corporation Counsel, of counsel,) for appellants:

The city of Chicago has the power to pay special assessment coupons, bonds and vouchers out of its general funds. Section 9 of article 9 of the constitution of 1870 provides, in part, as follows: "The General Assembly may vest the corporate authorities of cities, towns and villages with power to make local improvements by special assessment, or by special taxation of contiguous property, or otherwise." Pursuant to this constitutional provision the legislature has provided "that the corporate authorities of cities, villages and incorporated towns are hereby vested with the power to make such local improvements as are authorized by law, by special assessment, or by special taxation of contiguous property, or by general taxation, or otherwise, as they shall by ordinance prescribe." (Rev. Stat. chap. 24, sec. 507.)

The words "or otherwise," in the constitution and statute above referred to, have been declared by the Supreme

Court to be inserted "to prevent any possible construction of the clause which would render the special modes enumerated exclusive and a limitation upon the power of the legislature to vest such corporate authorities with power to make local improvements in any other manner." *Kuehner* v. *Freeport,* 143 Ill. 92.

A city has an inherent right to pay for improvements out of its general fund, and this right is not taken away by an act authorizing the improvement to be paid for by special assessment. *Commonwealth* v. *George,* 148 Pa. 462.

Local improvements may be paid for by combining special assessment with general taxation. *Kuehner* v. *Freeport,* 143 Ill. 92; 2 Cooley on Taxation, (3d ed.) 1203.

The city of Chicago has the power to purchase special assessment or improvement bonds, coupons and vouchers out of moneys derived from miscellaneous sources where there is a delay in the collection of assessments in the corresponding special assessment funds, and to reimburse itself by paying such bonds out of such special assessments when collected, under its power "to appropriate money for corporate purposes only." Rev. Stat. chap. 24, art. 5, sec. 1, clause 2.

A corporate purpose is one which promotes the general prosperity and welfare of the community, having a legitimate connection with the objects of the municipality and manifest relation thereto,—one which is germane to the objects of the municipality. *Taylor* v. *Thompson,* 42 Ill. 9; *Burr* v. *Carbondale,* 76 id. 455; *Wetherell* v. *Devine,* 116 id. 631; *Railroad Co.* v. *Smith,* 62 id. 268.

STEIN, MAYER, STEIN & HUME, (PHILIP STEIN, of counsel,) for appellee:

When an enumeration of specific things is followed by general words or phrases, the latter are held to refer to things of the same kind as specified. *Wilson* v. *Trustees,* 133 Ill. 443; *Misch* v. *Russell,* 136 id. 22; *Bank* v. *Adam,* 138 id. 483; *Gillock* v. *People,* 171 id. 307.

The words "or otherwise," found in section 9 of article 9 of the constitution of 1870, reading, "the General Assembly may vest the corporate authorities of cities, towns and villages with power to make local improvements by special assessment, or by special taxation of contiguous property, or otherwise," mean "or otherwise assessing the cost of the improvement against the property actually or presumptively benefited thereby, that being the kind or class of assessments particularly mentioned." *Wilson* v. *Trustees,* 133 Ill. 443.

A municipality having once fixed upon one mode of obtaining the funds for paying a local improvement cannot afterwards adopt another as to the same improvement. *Kuehner* v. *Freeport,* 143 Ill. 99.

From the ruling in the *Wilson case, supra,* it follows that any law providing for general taxation of property to pay for a local improvement is unconstitutional.

The common council of a municipality has no right to appropriate moneys out of the general fund in payment of local improvements. Rev. Stat. chap. 24, sec. 62.

Mr. JUSTICE WILKIN delivered the opinion of the court:

The one question for determination is, whether the city of Chicago possesses the power to pay or purchase improvement bonds, coupons and vouchers issued in payment of local improvements constructed by special assessment, where the ordinance authorizing the local improvement provides that it shall be paid for by special assessment.

It is insisted by appellants that pursuant to section 9 of article 9 of the constitution of 1870 the legislature passed the Local Improvement act of 1897, section 1 of which authorizes cities, villages and towns to make local improvements by special assessment, special taxation, general taxation or otherwise; that under this section, and the construction placed upon it by this court, the city possesses the discretionary power to prescribe in the original ordinance that the improvement shall be paid for entirely out of the

general fund or entirely by special assessment, or partly by special assessment and partly out of the general fund, and that after naming a mode of payment in the ordinance the city is not precluded thereafter from paying for the improvement in any manner than the one prescribed, but may pass another ordinance of equal dignity and standing with the original and prescribe therein another method of payment.

Section 9 of article 9 of the constitution of 1870 empowers the legislature to vest cities, villages and towns with the right to make local improvements by special assessment or by special taxation of contiguous property, or otherwise. In the case of *Wilson* v. *Board of Trustees,* 133 Ill. 443, we held that this section was adopted for the purpose of removing restrictions which had been placed upon the legislature by the constitution of 1848 and to authorize the making of local improvements by the levy of assessments on contiguous property according to frontage, and that the words "or otherwise" were used in the section for the purpose of excluding the possibility of misapprehension that because only cities, towns and villages could be authorized to make local improvements by special assessment or special taxation, they could not be authorized to make them by general taxation.

Prior to 1897, section 1 of the Local Improvement act passed under the above section of the constitution vested cities with authority to make local improvements by special assessment or by special taxation, or both, or by general taxation, or otherwise, as might be prescribed by ordinance. (Hurd's Stat. 1893, chap. 24, sec. 116, p. 268.) In the case of *Kuehner* v. *City of Freeport,* 143 Ill. 92, we held that the language of the above section was not directed to the mode of making a single improvement, but to the making of improvements in the plural, and that its purpose was to vest in the corporate authorities power to make improvements both by special assessment and special taxation, but that in case of a single improvement the city or village must decide by ordinance which of the modes it would pursue, and that the

words "or both" did not authorize a city or village to combine the two modes in a single assessment, but that they might combine general taxation with special assessment or with special taxation in the same proceeding.

On July 1, 1897, an amendment to section 1 of the Local Improvement act went into effect, conferring power on cities and villages to make local improvements by special assessment or special taxation of contiguous property, or by general taxation, or otherwise, as the city or village by ordinance might prescribe. This act was substantially the same as the one in effect prior to July 1, 1897, except that the words "or both" were omitted. Thus it will be seen that the omission of these words limited the application of the statute, and in no way could it be implied under this provision that an assessment might be made by special taxation and special assessment in the same ordinance. Outside of the sections above referred to, no provision of the statute has been called to our attention authorizing the two systems to be adopted in the same ordinance.

In the *Kuehner case, supra,* we held that the provision of section 9 of article 9 of the constitution, being an exception to the general rule and policy of the State and the dominant principle of the constitution, should not be extended beyond the clear import of the language employed. That rule may also apply to the statutes passed under that section of the constitution. Those statutes should receive no more liberal interpretation than the provisions of the constitution, upon which they are based.

The appellants contend that, notwithstanding the above provision, they may by ordinance prescribe that a certain local improvement may be paid for by special assessment, and then afterwards pay a portion of the same out of a general fund raised by general taxation. This method might open a way to great injustice. If the special assessment had been levied and paid by a portion of the property owners, and the city were permitted to purchase outstanding im-

provement bonds and afterwards a portion of those bonds should not be paid, some method would have to be devised which would equalize the payments so that the tax would be just and uniform, otherwise one property owner would have to pay his full share of the assessment as levied against him, while another might be required to pay only a part or escape entirely. The city council, by its original ordinance, may provide that an improvement is to be paid for in part out of the general fund and in part by special taxation, but after that ordinance has been passed and the assessment levied and the work completed and the bonds issued, there is no statutory provision which has been called to our attention authorizing the city council to change the method of payment, and we do not think the city council has any discretion outside of express statutory provisions.

It is next contended that the city has the power to purchase special assessment or improvement bonds, coupons and vouchers out of moneys derived from miscellaneous sources, where there is a delay in the collection of assessments in the corresponding special assessment fund, and reimburse itself by paying such bonds out of the special assessment when collected. In support of this contention it is insisted that paragraph 2 of section 62, article 5, chapter 24, of the statute, authorizes the city council to appropriate money for corporate purposes only, and provides for the payment of debts and expenses of the corporation, and that under this section the city has power to authorize the purchase of the bonds in the manner above described on the ground that such purchase is a corporate purpose. The sections of the statute providing for the making of local improvements are complete in themselves. They provide the manner in which the assessment shall be originated, how the contract shall be let, how the work shall be done, how the bonds shall be issued and how the collections shall be made. As we have already said, this method of levying a special assessment is contrary to the dominant policy of the State and should not be construed

beyond the clear import of the language used. Section 73 of the Local Improvement act (Hurd's Stat. 1903, p. 408,) provides that in case it shall appear that the assessment can not be collected, the municipality shall nevertheless not be in any way liable to the contractor in case of failure to collect the same, but it shall, so far as it can legally do so, with all reasonable diligence cause a valid assessment to be levied to defray the cost of the work until the contractor shall be fully paid.

Section 90 of the same chapter provides that no person or persons accepting vouchers or bonds shall have any claim or lien upon the city for the payment of such voucher or bonds, or the interest thereon, except from the collection of the assessment against which the voucher or bonds are issued, and the municipality shall nevertheless be in no way liable to the holders of said voucher or bonds in case of failure to collect the same, but the city shall use reasonable diligence to cause the assessment to be made and collected and the bonds and vouchers to be fully paid.

It will be seen from these provisions of the statute that it was the evident purpose and intention of the legislature to in no way hold the city responsible or liable for the vouchers, bonds or interest. This is a positive statutory provision, which would have priority over paragraph. 3 of section 62, article 5, chapter 24, as quoted by appellants. The city is powerless, by any ordinance which it might pass, to make itself liable in the face of the express provisions of the statute. While it might be of advantage to the city, and save money to the property owners and tax-payers, for the city to assume responsibility for the bonds thus issued, yet in the absence of legislative authority it is powerless so to do.

We find no reversible error, and the decree of the circuit court and the judgment of the Appellate Court will be affirmed.

*Judgment affirmed.*