## City of Chicago v. Union Trust Company.

### Gen. No. 13,580.

1. LOCAL IMPROVEMENTS—*when city chargeable with interest upon vouchers.* If a city is liable for the principal due for the construction of a local improvement, it is chargeable with interest: (1) upon funds illegally diverted, (2) upon the amount paid for delinquent property purchased by it, and (3) upon the amount assessed as public benefits.

2. LOCAL IMPROVEMENTS—*what chargeable to particular instalment*. Each instalment is properly chargeable only with its own expenses.

3. LOCAL IMPROVEMENTS—*what proof essential to show propriety of charges made against particular instalment*. In order to charge an instalment of an assessment with expenses made in connection therewith, it is essential that the city show the facts from which the propriety of such charges may be determined.

4. LOCAL IMPROVEMENTS—*effect where city purchases delinquent property*. Where a city, in default of other bidders, purchases property delinquent as to a special assessment, it becomes chargeable with the amount bid for such property, together with interest thereon.

5. LOCAL IMPROVEMENTS—*propriety of appropriation by city to pay for purchases at tax sales*. Where a city, in default of other bidders, purchases property delinquent for a special assessment, it is proper that it appropriate an amount sufficient to cover the bid made by it, together with interest upon such amount.

6. MANDAMUS—*when remedy by; need not be invoked*. A remedy by *mandamus* need not be invoked to compel the city to pay to a contractor the amount which it has bid for property delinquent for a special assessment, it appearing that the city has appropriated money to pay such bid.

Bill in chancery. Appeal from the Superior Court of Cook county; the Hon. THEODORE BRENTANO, Judge, presiding. Heard in the Branch Appellate Court at the March term, 1907. Affirmed. Opinion filed January 28, 1908.

Statement by the Court. This is an appeal from a decree of the Superior Court. Appellee filed its bill of complaint seeking to compel the city of Chicago, appellant, to pay balances claimed to be due upon vouchers issued in certain special assessment proceedings. The vouchers are set forth in the bill and all are in form substantially like that described as follows:

"Special Assessment Vouchers Warrant No. 17,352, Estimate No. 1, and Final of Installment No. 5, dated Chicago, September 14, 1893, in which it is stated that from the collection of the fifth installment of the special assessment above mentioned, made by the City of Chicago, and as confirmed by the County Court of Cook County, Illinois, on the 21st day of February,

A. D. 1893, for the purpose of improving Lawndale avenue from Ogden avenue to West Twelfth street, in said city, but out of no other assessment or fund, on the 1st day of October, 1897, or when, and as so collected, and in the city treasury, the City of Chicago, will pay to Barber Asphalt Paving Company, or order. the sum of Ten Thousand Two Hundred and Fifty-nine and Fifty-four Hundredths Dollars, being the fifth installment of the contract price of said Barber Asphalt Paving Company for said work, with interest thereon at the rate of six per centum per annum, from the 14th day of September, 1893, and annually thereafter, or when and as thereafter collected and in the city treasury, or so much of said principal sum and such interest as shall be so collected by said city upon said installment and interest thereon.''

The bill alleges, among other things, that said vouchers had been duly assigned to complainant, that they have been presented to the city for payment which has been refused, that the city has refused to pay the amounts represented by these vouchers or take any steps to have them paid; that the special assessments made for the various improvements to which the vouchers relate amounted in each case to a sum sufficient to pay for such improvements and to pay the vouchers in question in full; that the city has collected on such special assessments money sufficient to pay the said vouchers; that the city is indebted to said special assessment funds respectively for public benefits assessed against the city which it is the latter's duty to pay; that the city has illegally charged sundry items against the funds collected for said assessments and pretends there is no money in its possession to the credit of said assessment accounts; that if the city should state said accounts fairly and justly, it would appear there were large amounts of money to the credit of each of said accounts which should be paid complainant on account of such vouchers; that if the city should credit said special assessment accounts with amounts owing thereto by the city, there would

be sufficient money to the credit of such accounts to pay the vouchers in full; that it is the duty of the city to collect said assessments and complainant is informed and believes that in some instances, through negligence of the city, some money due on such assessments has been allowed to remain unpaid; that the city has charged in said accounts sundry items as expenses of said assessments, which were not paid by the city and not used for any legitimate expense of the improvements; that it has charged in the several special assessment accounts sundry items for rebates, inspection, engineering and costs which are largely in excess of just and lawful charges for such items; that items of debt in such accounts which are not chargeable to said special assessments are credited in other accounts of said city in such manner that portions of such special assessment funds which should be paid to complainant stand to the credit of other accounts of the city and the city's officials refuse to pay · complainant such amounts; that complainant is informed and believes that if the city would state the account of each of said vouchers, charging and crediting thereon none but proper charges and credits, there would be money enough to the credit of each of said vouchers to pay the same in full.

In an amended and supplemental bill it is alleged to be the duty of the city as trustee to credit the several installments of said vouchers, with the respective amounts due thereon, and use the same in payment of the vouchers; that the city is trustee of the funds of the several installments and such funds cannot be lawfully used by the city to reimburse it for any disbursements properly chargeable against other installments, as it is said they have been; that the city has purchased at the sale of lands liable to pay such assessments sundry parcels of such land, still holds the result of such purchase and charges the whole amount of such purchase against the respective installments mentioned in said vouchers, when in fact it has no

right to charge the same or any part thereof against said installments; that one or more of said special assessments was assessed in part upon real estate belonging to the city and that as to such amounts the part required to pay the vouchers should be paid by the city.

The amended and supplemental bill states that after the filing of the original bill, complainant instituted *mandamus* proceedings against the city to compel it to pay the public benefit judgments due on account of said several special assessments, but that nevertheless it is entitled to the relief prayed for. The bill prays for an accounting under direction of the court, that the city be required to pay complainant the amount justly due it on each of said vouchers, together with interest thereon, and that if there is not enough money properly to the credit of any of said vouchers to pay the same in full complainant may have a decree against the city for the balance thereof.

The answer of the city denies material allegations of the bill, and rests its defense substantially on the ground that the contractor's right of payment for work done under contracts for local improvements made under special assessments is not an absolute right but statutory, and that by written agreement made in each case it is confined to the amount which shall have been actually collected by the city through the respective special assessment proceedings. The city denies the allegation that on a proper statement of accounts there will be funds enough to pay the vouchers.

The cause was referred to a master. His report having been approved, a decree was entered finding the material allegations of the bill to be true, that there are certain appropriations out of which the vouchers could be lawfully paid, that the amount due December 8, 1906, was $11,101, and that this should be paid as follows: out of funds collected and held in trust to pay these vouchers $5,092.49; out of appropriations in 1905 to pay public benefits $5,135.55; and out of ap-

propriation of $75,000 for payment for property purchased by the city in special assessment proceedings $872.96, making up the total of $11,101. It is decreed that said sum of $5,092.49 if not otherwise paid, shall be paid out of an appropriation of $352,060 for "repayment to old law special assessment fund amounts illegally transferred at various times." It is further provided that all of said amounts and interest thereon not paid out of said three appropriations be paid out of an appropriation made in March, 1906, "to pay any decree against the city and to enable the comptroller to comply with any decree that may be rendered" in this cause.

George A. Mason and Frank Johnston, Jr., for appellant; Edward J. Brundage, Corporation Counsel, of counsel.

Holden & Buzzell, for appellee; William H. Holden, of counsel.

Mr. Justice Freeman delivered the opinion of the court.

It appears that by reason of payment by the city of public benefits assessed against it for certain local improvements, which payment was made in accordance with a judgment rendered in *mandamus* proceedings (City of Chicago v. The People, 215 Ill. 235), the claims of complainant on many of the vouchers referred to in the bill have been satisfied in full. The controversy is therefore now confined to the remaining six of the warrants or vouchers referred to in the bill of complaint. There seems to be no dispute as to the correctness of the computation by which the amount due complainant, including principal and interest on said unpaid vouchers, is fixed in the decree at $11,101. It is, however, denied in behalf of the city that interest can be allowed after the collection of the assessments and denied that there are any funds in the city's

hands actually applicable to payment of the amounts due on the vouchers. It is said to be undeniable "that there are practically no funds whatever actually in the warrants," the precise condition being that there is a deficit varying from between three and four hundred dollars to over seven thousand dollars in all of the six cases.

(1) As to the contention that the decree improperly allows interest on the vouchers after their maturity, if the decree is correct as to the principal of the vouchers, we are of opinion the interest was properly allowed. In City v. The People, 215 Ill. 235-239, *supra,* after reference to the statute it is said: "from these sections of the statute it is clear that the several installments assessed against private individuals shall bear interest from their date until maturity and they shall also bear interest until paid. The portion of the assessment payable by the public seems to be placed upon the same footing as the portion payable by private individuals." It was held that no distinction should be made. In the case at bar the decree provides for payment of the amounts found due complainant, first, out of funds collected by the city and held in trust by it to pay the vouchers; second, out of an appropriation made to pay public benefits; and third, out of an appropriation to pay for property purchased by the city at sales for the unpaid special assessments; and that all of said amounts found due, with interest thereon, and not paid out of the three appropriations above mentioned, should be paid out of another appropriation made by the city "to pay any decree versus the city and to enable the comptroller to comply with any decree that may be rendered" in the present cause. One of the appropriations was for $352,060, "for repayment to old law special assessment fund amounts illegally transferred at various times"—an implied confession, it may be remarked, that such illegal transfers had been made. If there were illegal transfers of trust funds which should be applied on

these vouchers, as the decree seems to have found, no reason appears why the city should not pay interest on money thus illegally borrowed, as well as upon any other borrowed funds. As to the amounts due from the city for public benefits and upon its purchases at tax sales applicable to the vouchers in question, no reason is perceived why the city, if liable for the principal, should not pay interest. As to the public benefits assessed against the city, the question of interest has been settled in 215 Ill. 235-239, above cited. The principle there stated is, we think, applicable in like manner, in case of tax purchases by the city of property sold for non-payment of these assessments, which the city is by law authorized to purchase (R. S. of 1893, p. 274, sec. 159) and for which purchases it has not paid.

(2) It is said in behalf of the city that the special assessment vouchers in controversy "are payable solely out of their respective special assessment funds and the city of Chicago cannot legally pay them out of its general funds," that there are no such assessment funds in its hands, and the city has no power to appropriate any for payment of these vouchers. The provisions of the special assessment law referred to are found in sections 49 and 64, article IX of the Cities and Villages Act. The first of these (section 49) provided that "all persons having any contracts with the city or village and who agree to be paid from special assessments shall have no claim or lien upon the city or village in any event, except from the collections of the special assessments made for the work contracted for." Section 64 further provided that "any person or persons accepting vouchers as provided herein for work done or performed upon local or public improvements shall have no claim or lien upon the city, incorporated town or village, in any event for the payment of said vouchers or the interest, except from the collection of the installments for which said vouchers are issued and provided, that this

section shall apply to all holders of any of said vouchers, whether the original contractors or their assigns." To the same effect is a provision in section 9 of the Local Improvement Act of 1897.  It is said by counsel for the city that these provisions of the special assessment law have been held valid and binding (City of Alton v. Foster, 207 Ill. 150), and that "the city is powerless by ordinance to make itself liable in the face of the express provisions of the statute" (City of Chicago v. Brede, 218 Ill. 528), and cannot appropriate funds to be used in payment of special assessment vouchers or bonds where there is a deficit in special assessment funds.  The city's contention is stated more fully as follows: that "appellee cannot be allowed to recover in this proceeding from the general funds of the city, but is limited solely and exclusively to recovery from the special assessment funds against which its vouchers are issued;" that "if there are no such funds actually in existence, but instead there are deficits in the warrants of the funds, then clearly the appellee cannot maintain this suit. It must seek relief by some other remedy."  It is further said to be "an undisputed fact in the record that there are no funds to the credit of these warrants," and that "there is no evidence whatever that the city in its corporate capacity used any of the special assessment funds for its corporate uses;" that appellee is seeking to recover "on the pure fiction that there should be funds in the several warrants when in point of fact there are none."  There is no material controversy as to the force and effect of the statute referred to.  The material question is one of fact.

We deem it unnecessary to set out in detail the evidence, all of it derived from witnesses in the employ of the city, as to the condition of the funds applicable to each of the warrants here in controversy.  It is, however, far from being an "undisputed fact" that the city does not hold funds to the credit of these

warrants upon a proper accounting. Taking one of the warrants as an illustration, there is evidence tending to show in reference to "Special Assessment Voucher Warrant No. 17352, Estimate No. 1. and Final of Installment No. 5," which voucher is described in the statement hereinbefore made, that upon the fifth installment of said Warrant "No. 17,352," the city has collected $11,380.73; that it has paid out therefrom $9,465.92, leaving a balance on hand of............$1914.81
The city, it is said, has appropriated for public benefits assessed against it on account of the improvement,........................................................ 7151.11

Making a total fund of........................................... $9065.92

The balance claimed to be due appellee on this voucher is $6955.69; showing apparently an amount in the hands of the city applicable in payment of this fifth installment of over $2,000 in excess of the amount of the voucher. The city, however, introduced evidence tending to show that the record of the Board of Local Improvements shows the condition of warrant No. 17352 as a whole—not the several installments— to be as follows:

Principal collected on the warrant,............. $49,424.61
Interest,  ----------------------------------------------------- 7,702.66

Making a total of................................... $57,127.27
Less discount allowed by city collector......... 68.42

Leaving a net amount collected of.... $57,058.85
The debits appear to be as follows:
Vouchers issued, including the one in controversy, ----------------------------------------------------- $50,686.51
Interest, --------------------------------------------- 8,489.49
Costs, --------------------------------------------- 3,221.07
Overpaid interest refunded,............. 37.17

Total,  ........................................... $62,434.24

This statement leaves an apparent deficit of $5,375.39 from which, deducting what are called uncollected public benefits of $1,818.51, the apparent net deficit would be $3,556.88, provided appellee's voucher of $6,955.69 should be paid in full. Until it is so paid there is apparently, even on this showing, a balance of over $3,000 applicable, for aught that appears, on account of complainant's voucher. There is, however, so far as we discover, no evidence tending to show that the disbursements apparently made according to such record were actually made, or that they are properly chargeable to account of that warrant. In the case of this warrant, as in each of the other warrants, the amounts collected by the city on the particular installments for which complainant holds the vouchers in controversy, including amounts appropriated by the city to pay the public benefits and amounts represented by tax certificates held by the city, are apparently, as there is evidence tending to show, more than sufficient to pay all the complainant's vouchers in controversy.

If, as claimed by complainant, the accounts should be so made up as to show the proper credits and disbursements as to each of the several installments, and that if there have been over payments made by the city upon any installment (as to which there is no competent evidence apparently), such over payments could not properly be charged to the other installments, then it would be unnecessary to inquire what over payments, if any, there were as to any installment except those against which the vouchers in controversy have been drawn. As to these last we are of opinion, as above indicated, that the evidence tends to show a balance on hand in excess of the amounts claimed by complainant on each voucher. We are inclined to concur in complainant's contention that each installment is properly chargeable only with its own expenses. The provisions of the statute applicable as to installments may be found in sections 168a and

168i, pages 276-277, R. S. of 1893. In these sections it is provided in substance that from the first payment for any improvement when collected "shall first be paid all the costs of making the said assessment, including court costs," and that the remainder be paid "on the contract for said work." The amount remaining due upon the contract for the improvement is then to be divided into four equal parts and vouchers issued "for each part, payable in the same order and manner that the installments are payable," and to bear the same rate of interest. These provisions seem to contemplate no charges other than such as properly pertain to the collection and payment of the installments themselves against the "four equal annual installments" into which "the amount remaining due upon the contract for said improvement" is to be divided after first paying "all the costs of making the said assessment, including court costs." It is not enough therefore for the city as trustee of the funds collected on these assessments, including such sums as are due and owing by the city itself to such funds, merely to show—as in case of Warrant 17,352, for example—that it has made a lump charge of $3,221.07 against the assessment as a whole for "costs." It must be able to show the facts from which the propriety of these disbursements can be determined. What is said in City v. The People, 215 Ill. 235-239, *supra,* is applicable in substance; namely, that it is the duty of the city to "set out clearly and definitely in detail all of its items of receipts and expenditures so that the court can see that it is not the fault of the municipality that the debt is not paid." This the evidence entirely fails to do. The city has, we think, clearly failed to show that it has not on hand "from the collections of the special assessments made for the work contracted for," sufficient money to pay the vouchers in controversy.

(3)   In certain of the warrants there have been "abatements" made by the city after confirmation of

the assessments and before their collection. These seem to have been made by the city in administering the fund and not by the court. It is urged in behalf of the city that such reductions "cannot be considered in contemplation of law as having been collected and as constituting an available part of the special assessment fund. In case of one of the warrants in controversy these reductions amounted to over $4300. It is conceded that these abatements were irregular and improper, that no official of the special assessment department of the city could "reduce or modify in any way the assessment as confirmed by the court." It appears to be contended, however, that the only way in which the city can be compelled to collect and account for these abatements is by *mandamus,* that the money not having been actually collected, no claim therefor can be made against the city. In view, however, of the fact that the decree in this case does not require the city to pay complainant any money on account of the sums remaining so uncollected, it is unnecessary further to consider the question.

(4) It is urged that where a municipality in default of other bidders becomes the holder of tax certificates on property sold to enforce the collection of delinquent special assessments, such tax certificates cannot be treated as such cash assets in the special assessment funds; and that a municipality is not liable out of its general funds to holders of special assessment vouchers for the amount of such tax certificates. It appears that the city has appropriated money to pay "for property purchased by the city in special assessment proceedings." As we have said, the law authorizes the city to make such purchases. If such sale is made to a private individual he would be required to pay the amount bid at the tax sale upon receiving his certificate of purchase or a tax deed. No reason is apparent why there should be any distinction between a municipality and an individual in that respect. It is said that before seeking to hold the city liable for

amounts due upon such purchases, resort must be had
"to the proper remedy to compel the city to take such
action," referring apparently to *mandamus*. We do
not concur in this view. The city has not refused, so
far as appears, to pay for these purchases. On the
contrary, an appropriation for the purpose has been
made and the money set apart. Its application to
the proper assessment fund is a mere matter of book-
keeping, an administrative function, for which no writ
of *mandamus* has so far appeared to be necessary.
In City of Chicago v. The People, 215 Ill. 235-236,
before referred to, the petition for *mandamus* prayed
for the writ to compel the city "to appropriate in their
next annual appropriation ordinance such sum or sums
of money as were necessary to pay such public bene-
fits and interest thereon." The writ was issued "com-
manding respondents to make an appropriation."
This the city has done and has paid, as is conceded
in this case, amounts so appropriated. An appropria-
tion to pay for such purchases at tax sales having
been made, no reason as yet appears why payment
could not if necessary be enforced by judgment. In
case of unliquidated demands "and in cases where the
liability is doubtful and disputed, *mandamus* is not
an appropriate remedy in the first instance. The
claim must first be established and liquidated by a
judgment, and then if the proper authority refuses
to provide for its payment, *mandamus* lies to compel
it to do so." A. & E. Ency. of L., 2nd. ed., vol. 19, p.
793. We are unable to concur in appellant's conten-
tion that the city had no right nor power to make
such appropriation for tax certificates on land sold
for unpaid special assessments, which it is expressly
authorized by statute to so purchase. In support of
this contention we are referred to City of Chicago v.
Brede, 218 Ill. 528, which is not, we think, in point.
The case at bar is not one where the city "has sought
to make itself liable in the face of the express pro-
vision of the statute." In making such appropriation

the city was, we think, using reasonable diligence to cause the assessment to be collected and the vouchers paid as the statute requires.

For reasons indicated the decree of the Superior Court will be affirmed.

*Affirmed.*