Samuel K. Markman, Appellee, v. The City of Calumet City, Appellant.

Gen. No. 39,962.

532

Opinion filed December 13, 1938.

MILLER, GORHAM, WESCOTT & ADAMS and JOHN E. PAVLIK, both of Chicago, for appellant; HERBERT C. DE YOUNG, of Chicago, of counsel.

MARKMAN, DONOVAN & SULLIVAN and HENRY O. NICKEL, both of Chicago, for appellee.

MR. PRESIDING JUSTICE FRIEND delivered the opinion of the court.

Samuel K. Markman, Martin H. Finneran and Consoer, Townsend & Quinlan, a corporation, filed separate suits against city of Calumet City to recover for services claimed to have been performed by them as attorney, commissioner and engineers, respectively, in connection with a special assessment proceeding for the construction of sewers in Calumet City. The three suits were consolidated and tried together before the court without a jury, resulting in judgment in favor of Markman for $3,500, Finneran for $1,500 and Consoer, Townsend & Quinlan for $2,000, respectively. Defendant appealed from the three judgments thus rendered, and during the pendency of these appeals, this suit by Markman, No. 39,962 and cases numbered 39,963 and 39,964 were consolidated by orders entered in each case.

The facts essential to a consideration of the issues involved disclose that June 23, 1927, defendant, a municipal corporation, passed an ordinance providing for the construction of a connected system of combined sanitary and storm water sewers, pursuant to the provisions of the Local Improvements Act (Ill. Rev. Stat. 1937, ch. 24 [Jones Ill. Stats. Ann. 76.003 *et seq.*]), the total estimated cost of which, including the making, levying and collecting of the assessments and all lawful expenses attending them aggregated $261,200. In compliance with the ordinance a petition was filed in the county court July 21, 1927, and was docketed as Calumet City special assessment No. 183. Thereafter, Martin H. Finneran, who had been appointed by the president of the board of local improvements of Calumet City, was ordered by the county court to prepare a true and impartial assessment of the cost of the proposed improvement and return it to the court. A report and assessment roll in the aggregate amount

of $261,200 was accordingly filed and thereafter confirmed by the county court September 26, 1927.

The journal proceedings of the board of local improvements of Calumet City disclose that defendant had some difficulty in obtaining bids for the proposed improvement. October 13, 1927, the secretary was authorized to advertise for bids, to be opened October 21, 1927. No bids were received, and thereafter other notices were published from time to time, without producing any results. The question of obtaining bids was frequently considered and deferred until 1929. The record shows that the following bids were finally received, pursuant to a notice published in a local newspaper January 12, 1929: Kruse Construction Company —$189,925; DeAndreas Bros.—$201,175.95; Public Construction Company—$188,659; Krenn & Dato— $196,783. On January 29, 1929, the contract was awarded to Public Construction Company as the lowest responsible bidder, the secretary of the board was directed to publish notice of the awarding of the contract, and on January 31, 1929, the local newspaper published notice that it had been awarded to Public Construction Company for $188,659.

Thereafter, March 1, 1929, the city issued special assessment voucher No. 634, payable to bearer, in the sum of $4,716.48, with interest thereon at 6 per cent per annum, which was delivered to Samuel K. Markman, plaintiff herein, for services performed by him as attorney on this special assessment proceeding. Another voucher, No. 635, in like amount, was evidently issued to Finneran, plaintiff in one of the consolidated cases, but it was never signed by the mayor or attested by the clerk, and was thereafter marked ''cancelled'' as of October 13, 1931, but never delivered to Finneran. A third voucher, No. 632, in the sum of $8,125 was issued to Consoer, Older & Quinlan, plaintiff in the third consolidated suit. This voucher likewise was

never signed by the mayor or attested by the clerk, and was canceled October 12, 1931, and never delivered to the Consoer corporation.

It appears from the evidence that Markman had been city attorney for Calumet City for a great many years. He had never had a written contract with the municipality. In the early years of his employment he had been paid 4 per cent or 5 per cent of the cost of special assessment improvements, and later, when the village embarked upon a large amount of special assessment work, his compensation was reduced to 2½ per cent of the contract price. He testified that as city attorney he performed all legal services for the city, and was to receive additional compensation for services rendered in connection with special assessments. He understood that he was to be paid by voucher in special assessment cases, and vouchers were issued to him in all cases where a contract was let as soon as the clerk had filed in the office of the county court in which the assessment was confirmed a certificate of the issuance of first voucher for work done. In this proceeding such a certificate was issued February 21, 1929, in the nominal sum of $50, certified to by the engineers, Consoer, Older & Quinlan, and was filed with the clerk of the county court on that date. Simultaneously with the issuance of the first voucher issued to the contractor a voucher was issued to Markman. It is conceded that Markman did all the legal work in connection with the special assessment proceeding up to confirmation thereof and the awarding of the contract, and he testified that the usual, customary and reasonable charge of an attorney doing special assessment work in Cook county at that time was 4 or 5 per cent of the cost of the improvement; that after completion of his work in this proceeding he had submitted a bill to the board of local improvements of Calumet City which had theretofore been allowed in

the sum of $6,750, but had afterward, without his consent, been reduced to $4,716.48, this sum having evidently been calculated on the basis of 2½ per cent of the contract price. Markman made no objection to this reduction and accepted the voucher.

Martin H. Finneran testified that he had spread the assessment in the instant proceeding, prepared the reports, conferred with the attorneys during the preparation of the assessment, as well as with the engineers regarding the area of the sewer district; that he had submitted a bill to the board of local improvements for $6,750, which was later reduced by the board so as to equal 2½ per cent of the contract price. Finneran said that he was unaware that a voucher had been issued to him until he received a letter from the city clerk in October, 1931, requesting him to return the voucher for cancellation. The witness further testified that the fair and reasonable fee for commissioners for spreading assessments in Cook county is 2½ per cent of the cost. He detailed the character of his services and said that he had some outlays in connection with spreading the assessment. His overhead expense on the job was estimated by him at $2,500 to $3,000.

On behalf of Consoer, Townsend & Quinlan, George O. Consoer testified that he was a member of that firm; that he had helped prepare plans and specifications for special assessment No. 183, and that the service consisted of drawing plans and specifications, assisting the attorneys and the commissioners, furnishing maps to the assessment commissioner, outlining the sewer district and appearing in court when the case came up for confirmation; that the usual, customary and fair price for making plans and specifications in special assessment proceedings up to the time of letting the contract is 2½ per cent of the cost, and that an additional charge of 1 per cent is usually made for supervision. Consoer likewise said that his firm had

never received a voucher from Calumet City and that it was apprised for the first time in October, 1931, that a voucher had been issued.

The construction of this improvement was never carried out. The only reason assigned for the failure of the city to complete the improvement is contained in a letter dated October 7, 1931, written to the three plaintiffs, saying: ''We have learned from our last Audit Report that no work was actually performed in Special Assessment 183 due to the fact that there was no market for the bonds at that time. Regardless of the fact that no work was actually performed, vouchers were issued against this assessment. Of the total amount issued, you are holding voucher in the amount of [here the amount of the respective vouchers was set forth]. I am at this time, asking you to return the voucher which you have in your possession, for cancellation.''

Public Construction Company, to whom the contract was awarded, had made a deposit of 10 per cent of its bid, amounting to some $19,000, and furnished bond for the completion of its undertaking. Markman testified that long after awarding the contract to Public Construction Company the board met ''surreptitiously,'' returned the certified check to the contractor, and permitted it to withdraw its bond. It is conceded that the proceeding was never dismissed in the county court.

Since the improvement was never carried out and no funds became available from which the Markman special assessment voucher could be paid, he, as well as the other plaintiffs, claim that they have a right to recover on a *quantum meruit*. They concede that under the decisions cited by defendant, where the proceeding ripens into a completion and levying of an assessment, persons holding special assessment vouchers payable for expenses incurred in the proceeding, must look to the specific fund for payment for the

services rendered. (*City of Chicago v. Brede,* 218 Ill. 528; *Northern Trust Co. v. Village of Wilmette,* 220 Ill. 417.) It is urged, however, that where the municipality completes the proceeding by procuring confirmation of the assessment and actually awards the contract for construction, and then without any legal justification abandons the work, even though the proceeding is not dismissed in the county court, there can be no valid reason why the city should not be held generally liable on a *quantum meruit* basis, and it is argued that the conduct of Calumet City in this proceeding amounted to an abandonment of the improvement and that in that situation the same rule applies as where a special assessment proceeding is not carried out to completion, either because of the invalidity of the ordinance or because it is dismissed before confirmation. This raises the principal question involved in these consolidated appeals, namely, whether there was an abandonment of the improvement on the part of the defendant.

It is conceivable, of course, that no work was actually performed at the time because as the clerk said in his letter to plaintiffs on October 7, 1931, "there was no market for the bonds at that time," and Calumet City may well have considered it advisable to defer the actual construction work until better market conditions prevailed. It is difficult to understand, however, why the contractor's check was returned, why it was permitted to withdraw its bond, and why the city clerk, after notifying each of the plaintiffs that no work had been done and impliedly indicating that none would be done, requested them to return their special assessment vouchers for cancellation. It is significant that no effort was made to carry out the improvement between October, 1931, and August 11, 1936, when these suits were instituted, and it may fairly be inferred from these circumstances that the city had no intention thereafter to proceed with the work. Substantially 7

years had elapsed from the time the contract was awarded to Public Construction Company in 1929 until the suits were filed, and the record contains no suggestion of any effort whatsoever on the part of the city to proceed with the work nor that it has any intention of carrying out the improvement. This it seems to us, constitutes a clear abandonment.

Defendant has devoted the major portion of its argument to the premise that under secs. 73, 88 and 90 of the Local Improvements Act (Ill. Rev. Stat. 1937, ch. 24 [Jones Ill. Stats. Ann. 76.090, 76.109, 76.113]) the city cannot be held generally liable, and in support of this contention it relies principally on *City of Chicago v. Brede,* 218 Ill. 528; *First Nat. Bank v. Dolton,* 288 Ill. App. 85; *Berman v. Board of Education,* 360 Ill. 535. It was held, however, in *Gray v. City of Joliet,* 287 Ill. 280, 285, that "where the city abandons the proceeding, as it has a right to do, before it reaches the final stage of levying the assessment, a person like the commissioner having a claim for the preliminary work of preparing the assessment roll has no claim against any special fund, for no such fund is raised, and he has no remedy by *mandamus* to compel the city to levy the assessment, for the municipality has the lawful right to abandon the proceeding and not make the improvement. . . . It cannot relieve itself from liability to pay the reasonable expenses incurred where the city itself voluntarily abandons and dismisses the proceeding before judgment of confirmation."

On oral argument considerable stress was laid by counsel for defendant on the fact that the proceeding had never been dismissed, and it was argued that the *Gray* case applies only to proceedings where dismissal was had, definitely indicating an abandonment of the project. We see no difference in principle, however, between a situation where the proceeding is dismissed

and where from all the facts and circumstances it clearly appears that there has been a definite abandonment of the project. And since no funds became available out of the special assessment by reason of the city's abandonment of the proceeding, plaintiffs ought to be allowed to recover on a *quantum meruit* basis for the services rendered.

In *Gray v. City of Joliet, supra,* Gray had been appointed to spread the assessment, and agreed, as here, to take his pay from the fund derived from the special assessment, but, as the court pointed out in its opinion, the city counsel by their own act destroyed the fund from which he should be paid, and having acted in good faith in his transactions with the city, and the city having received and accepted the benefit of his services, the court held that he should be paid therefor. It was conceded by counsel for defendant that if the proceeding in the case at bar had been dismissed, plaintiffs would be entitled to recover for their services. We think Calumet City by its conduct in abandoning the improvement destroyed the fund from which plaintiffs could be paid, just as effectively as if the proceedings had been dismissed, and that plaintiffs having in good faith rendered valuable services, the benefits of which the city accepted, they should be paid therefor.

The question arose on oral argument as to whether mandamus was available as a remedy to compel Calumet City to complete the improvement, and counsel for defendant filed additional authorities citing *Church v. People ex rel. Kochersperger,* 174 Ill. 366, and several other decisions under which it is contended that plaintiffs could compel the reletting of the contract by mandamus. In the *Church* case the municipality had not completed the special assessment improvement according to the specifications of the ordinance, and on application of the treasurer for judgment for the delinquent assessments the court held that where it was admitted that the location of the sewer had been changed the

burden was upon the applicant to prove that the completed improvement was substantially in compliance with the ordinance. By way of *dictum* the court said that during the course of construction the property owner who had been assessed would have a right to proceed by mandamus to compel the city to complete the improvement. That case involves a right of a property owner but it did not, nor did any of the other cases cited by defendant, deal with the rights of attorneys, commissioners or engineers to compel construction of improvements for the sole purpose of collecting their fees. Likewise, in *Webster v. City of Chicago,* 83 Ill. 458, cited by defendant, the court, by way of *dictum,* pointed out that the property owner is the one who has the right to have the improvement installed, and where he had paid for it, can compel the city by mandamus to make it. We do not think these decisions are applicable to the circumstances of this case, or that plaintiffs herein could maintain mandamus proceedings to compel the city to act, because as pointed out in *Gray v. City of Joliet, supra,* the city has a right to abandon the proceeding before it reaches the final state of levying the assessment, and "a person like the commissioner having a claim for the preliminary work of preparing the assessment roll has no claim against any special fund, for no such fund is raised, *and he has no remedy by mandamus to compel the city to levy the assessment, for the municipality has the legal right to abandon the proceeding and not make the improvement."* (Italics ours.)

It is further urged on behalf of defendant that the provisions of sec. 4, article VII of the Cities & Villages Act (Ill. Rev. Stat. 1937, ch. 24, p. 365 [Jones Ill. Stats. Ann. 21.196]) require a prior appropriation before officials of a municipality are authorized to enter into a contract. In the case at bar the work performed by Markman was under a contract providing that he was to be paid out of the special assessment fund, and

defendant contends that that is the only manner in which Markman and the other two plaintiffs could be paid. The contention thus made is inconsistent with the argument that a prior appropriation is necessary. The ordinance authorizing the improvements specifically required that the cost of making and levying and collecting should be assessed against the property under the provisions of sec. 94 of the Local Improvements Act (Ill. Rev. Stat. 1937, ch. 24 [Jones Ill. Stats. Ann. 76.117]), and it has been generally recognized that attorney, commissioner and engineering fees are legally payable out of what is generally termed the 6 per cent item. In *Langworthy v. Village of Oak Lawn,* 286 Ill. App. 236, 240, the court held that vouchers issued to evidence the cost of engineering and inspection were on a parity with vouchers issued to attorneys for the cost of the legal services rendered. In the case at bar defendant was evidently under the misapprehension that it had issued vouchers to the commissioner and engineers, as well as to the attorney, and it should not now be allowed to take any other position.

As a third contention it is urged that the claim of the three plaintiffs is barred by the statute of limitations, which provides that actions on unwritten contracts "shall be commenced within five years next after the cause of action accrued." It is urged that the claim for services performed accrued during the year 1927, and that suits were not commenced within five years from that date and until August 11, 1936. In *Davis v. Munie,* 235 Ill. 620, the court pointed out that the statute itself fixes the time when the cause of action accrues, and said that "it means when facts exist which authorize one party to maintain an action against another." The question thus presented is when the cause of action accrued in the instant case. Although the judgment of confirmation was entered in 1927, almost two years elapsed before the contract was awarded in

January, 1929, and plaintiffs were justified in believing that after the contract was awarded the improvement would be constructed. If the city had proceeded with the work the plaintiffs would have had to await the collection of the assessment before payment could be made to them for their services. However, the city returned the certified check to the contractor and canceled his bond, and it was not until October 7, 1931, that plaintiffs were apprised by the city clerk why no work had been done, and the lapse of time from October, 1931, until August, 1936, when suit was instituted, without any indication on the part of the city that it intended to carry out the improvement, confirms the abandonment. We think it was not until plaintiffs received the letter from the city clerk apprising them of the fact that no work had been done, and requesting the return of their vouchers for cancellation, that facts came into existence which would authorize the maintenance of an action against the city, and this was within the statutory period.

The remaining contention is that plaintiffs failed to prove the reasonable value of the services rendered. We have examined the record and have outlined a summary of the testimony given by the respective plaintiffs on this phase of the cases and are of opinion that the evidence sufficiently supports their claims.

For the reasons given herein the judgment of the city court of Calumet City in favor of Samuel K. Markman and against the city of Calumet City, is affirmed.

*Judgment against the city of Calumet City affirmed.*

JOHN J. SULLIVAN and BURKE, JJ., concur.