City of Chicago v. Singer.

## City of Chicago v. Charles G. Singer, Trustee, etc.

### Gen. No. 11,348.

1. SPECIAL ASSESSMENT—*assumpsit lies to recover rebates due upon.* Where a property owner has paid a special assessment and is entitled to a rebate upon account thereof, assumpsit may be maintained by him against the municipality which levied and collected such assessment for the recovery of the rebate so due.

Action of assumpsit. Appeal from the Superior Court of Cook County; the Hon. JOSEPH E. GARY, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1903. Affirmed. Opinion filed October 25, 1904.

FRANK JOHNSTON, JR., for appellant; EDGAR BRONSON TOLMAN, Corporation Counsel, and ROBERT REDFIELD, of counsel.

EDWARD B. ESHER, for appellee.

MR. PRESIDING JUSTICE STEIN delivered the opinion of the court.

This is an appeal from a judgment for $678.35 recovered against appellant by appellee as trustee of the estate of H. M. Singer, deceased, in an action of assumpsit for rebates due the estate in respect of special assessments levied by the city of Chicago for curbing, filling and paving

Thirty-eighth court in said city.  In the view that we take of the case the sole question is whether the city is liable in assumpsit.

The declaration consists of the common counts, to which appellant pleaded the general issue.  The cause was submitted for trial without a jury upon a stipulation of facts, the material parts of which are as follows :  On or about October 18, 1894, H. M. Singer paid to the city the sum of $1,128 for a special assessment, being warrant No. 16533, on certain lots.  Subsequently it was found that said sum was $648.85 in excess of Singer's proportionate share for making the improvement and that the sum last mentioned was lawfully due him as rebate.  On May 17, 1895, Singer paid to the city the sum of $291.57 for special assessment warrant No. 19844, upon which the sum of $119.52 was lawfully due him from the city as rebate, being the excess of the lawful amount for which the assessment should have been made.  On account of said rebate the city has paid Singer $90.92, leaving a balance still due his estate of $29.60.  Before the bringing of the suit H. M. Singer died and appellee was duly appointed trustee of his estate.  The rebates for which the suit is brought have not been paid by the city, although it has been frequently requested to do so, both by H. M. Singer and appellee.

It appears further from the stipulation that in the fund relating to warrant No. 16533 there are no assets on hand with which to pay said rebate of $648.85.  There are uncollected assessments amounting to $627.77 and uncollected public benefits amounting $1,274.12.  For the uncollected assessments the city purchased and now holds a tax certificate upon the delinquent property.

As to warrant No. 19844 it appears that the assets in the fund relating thereto consist of a cash balance of $284.08 and uncollected assessments amounting to $111.22, for which the city holds a tax certificate of sale of the delinquent property.  There are outstanding rebates amounting to $377.13 as against a cash balance of $284.08 and it is claimed that this condition of the fund would necessitate a

ratable payment of the rebates; that there was not enough on hand in the fund to pay appellee's rebate in full and that it was error in entering judgment to allow him the full rebate of $29.60.

Section 65 of article 9 of part 1 of the Cities and Villages Act reads as follows:

"If upon the payment of the money and issuance of the vouchers, as provided for in the last section hereof, there should be any surplus remaining on said special assessments over and above the payment aforesaid, it shall be the duty of the proper authorities of said city, incorporated town, or village, to at once cause the respective installment to be credited with their respective proportion of said surplus, and in case any person or persons have, before said credit has been entered, paid his assessment or any part thereof, without having received the benefit of said credit, the proper authority shall at once cause notice of such overpayment to be sent by mail to the person by whom such overpayment was made, and upon proper proof the same shall be repaid."

Section 64 of article 9 of part 1 of said act, being "the last section hereof" above referred to, is as follows:

"Any person or persons accepting the vouchers, as provided herein, for work done or performed upon any local or public improvement, shall have no claim or lien upon the city, incorporated town, or village, in any event, for the payment of said vouchers or the interest, except from the collection of the installments for which said vouchers are issued, and, provided, that this section shall apply to all holders of any of said vouchers, whether the original contractors or their assigns."

Section 47 of the same article, treating of supplemental assessments, provides: "If too large a sum shall at any time be raised, the excess shall be refunded ratably to those by whom it was paid."

Although the city has collected and received from H. M. Singer, deceased, more than his lawful share of the expense of the public improvement, and although the excess has not been paid back, yet it claims that it has in its possession or control no means belonging to his estate, that it is not liable in this form of action, and that the only remedy

open to appellee is by mandamus either to compel the city to collect the uncollected assessments or to compel the city council to include in the annual appropriation bill a sufficient amount to pay the uncollected public benefits judgment. The contention is that under the two sections of the act first above quoted the property owner entitled to rebate can resort only to the special fund raised for the particular improvement, that he cannot recover out of the general fund of the city, and that he occupies precisely the same position as a contractor constructing the improvement, who, under the express language of section 64, must look for payment to the special fund solely. There is nothing on hand to the credit of one of the warrants in question; and assuming for the purposes of this decision that the same condition exists as to the other, it would follow that appellee should not have recovered any part of his present judgment.

We are unable, however, to appreciate the force of the reasoning which leads to such a conclusion. The entire argument rests upon the words "any surplus remaining on said special assessments," found in the beginning of section 65, from which it is sought to be inferred that the "surplus," and nothing else, shall be repaid. Two cases are provided for by the section; one where the owner has not paid the special assessment levied upon his property, the other where he has. In the former, the owners are "to be credited with their respective proportion of said surplus;" in the latter, "the proper authority shall at once cause notice of such overpayment to be sent by mail to the person by whom such overpayment was made, and upon proper proof the same shall be repaid." There is nothing in this language or in that of section 47 to limit liability to a special fund or to the "surplus." On the contrary, a general obligation to "repay" is expressly imposed upon the municipality, both by sections 47 and 65. Appellant cites Farrell v. Chicago, 198 Ill. 558, where the Supreme Court held that a contractor who had agreed to take pay only out of special assessments and to run the risk of their

invalidity has no right of action against the city in case a portion of the assessment is held invalid except to compel a supplemental assessment by mandamus. The wording of the contract in that case is quite similar to that of section 64, aforesaid; and it cannot admit of doubt that a person accepting or holding a voucher of the kind mentioned in the section must look for his pay only to "the collection of the installments for which said vouchers are issued." The very fact, however, that we find this express limitation in section 64, which relates to contractors, and not in section 65 or 47, which relate to the assessed property owners, is an additional reason for holding that the latter, when entitled to rebates, may sue the city in assumpsit, and need not resort to mandamus proceedings. If the legislature had intended to limit the liability of municipalities as contended by appellant, it is to be presumed they would have said so. No reason occurs to us why, if such was their intention in both cases, they should have given clear and unmistakable expression to it in the one and not in the other.

As to how it came about that there is a total want of funds *in re* warrant No. 16533 and a partial want of funds *in re* warrant No. 19844, the record is silent. For aught appearing the moneys overpaid by the assessed property owners may have been squandered. If we presume, as we think we should, that they were diverted into and became a part of the general treasury of the city and have been used by it in payment of its current expenses, or if not used, are still in the treasury, it does not seem reasonable or equitable that the city be permitted to evade its liability. Whether the money be still in its possession or has been used by it, in either case it is money belonging to appellee for which the city is indebted to him, and which he may recover in an action for money had and received.

The judgment is affirmed.

*Affirmed.*