## Barber Asphalt Paving Company, Appellee, v. City of Chicago, Appellant.

### Gen. No. 13,743.

1. LOCAL IMPROVEMENTS—*when special assessment vouchers may be paid from general funds.* Special assessment vouchers may be sued upon and recovery had thereon out of the general funds of a city where it appears that deficiency in the special assessment funds applicable to the payment of such vouchers was caused by reason of an unlawful diversion and misapplication by the city of such funds from the purpose for which they were collected. *Held*, that a premature payment of rebates is such an unlawful diversion which entitled recovery from such general funds.

2. LOCAL IMPROVEMENTS—*when payment of special assessment vouchers may not be made from instalments of assessment other than that against which it is issued.* If the assessment was confirmed prior to the enactment of section 86 of the Local Improvement Act, payment of a special assessment voucher out of any instalment other than that against which it was issued is improper.

3. LOCAL IMPROVEMENTS—*when city deemed to have collected amount of assessment.* Where a city pursuant to statute has become the purchaser of land assessed and returned as delinquent, it is deemed, for the purpose of payment of special assessment vouchers, to have collected the amount recited in the certificate of purchase issued to it.

4. LOCAL IMPROVEMENTS—*when city liable for interest upon spe-*

*cial assessment vouchers.* A city is liable for interest upon special assessment vouchers where payment thereof has been illegally withheld.

Assumpsit. Appeal from the Superior Court of Cook County; the Hon. Theodore Brentano, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1907. Affirmed. Opinion filed March 6, 1908.

**Statement by the Court.** This is an action brought by the Barber Asphalt Paving Company against the city of Chicago to recover balances claimed to be due on sundry special assessment vouchers issued by the city in payment for local improvements. These vouchers provide for their payment out of the funds collected by special assessment.

The cause was submitted to the court, a jury having been waived, upon a stipulation which gave each party the benefit of all claims and defenses, to the same extent as if specially pleaded, and in which the facts are stated as follows:

1. The plaintiff is the holder of sundry vouchers issued as explained more fully in section 3 of this stipulation against the reserve fund created out of the proceeds of special assessments to defray the cost of local improvements constructed by the plaintiff for the defendant. Said vouchers are now and have been for a long time due and payable and the amount so due as principal and likewise the amount claimed to be due as interest and the total amount claimed to be due as both principal and interest, after deducting payments made thereon, are indicated in the schedule appearing at the end of this stipulation, marked Exhibit 1, Schedule "A," "B," "C," which are hereby incorporated into and made a part of the same. Copies of said vouchers are hereto attached and marked Exhibits 2 to 17, inclusive. All of said vouchers together constitute the subject of the suit, the plaintiff demanding and the defendant refusing payment of the same.

2. It appears from the vouchers in controversy and it is admitted in this proceeding, that the various improvements upon which the vouchers now sued upon were issued, were properly authorized and constructed under the law in regard

to Local Improvements in the State of Illinois in force at the time said improvements were made; that is, ordinances were duly passed for the construction of said improvements and said ordinances ordained that the cost thereof should be paid by special assessment.  Special assessments were duly confirmed by the County Court of Cook county and certified by the city collector for collection.  Bids were solicited by the construction of the said improvements and contracts for construction were duly awarded to the contractors, including the plaintiff and others, who were respectively the lowest regular responsible bidders in each case.  The names of said contractors are set hereinafter in the schedule.

Said contractors thereupon proceeded to construct the said improvements and completed the construction thereof in due time to the satisfaction of the then city authorities, and in all respects in accordance with the respective ordinances and specifications thereto attached and contracts executed thereunder, as appears from the vouchers; whereupon said contractors, including the plaintiff, became entitled under the provisions of their contracts with the defendant, to the various sums of money therein stipulated to be paid.

3. In the case of each improvement it is provided in the respective contracts, in accordance with the laws and ordinances then in force, that a certain portion of the contract price should be retained by the city as security for the proper completion and maintenance of the work and paid to the contractor in annual installments.  In each of the cases here involved the work was properly completed and maintained.  Certain of these installments are in default and are represented by the vouchers now in suit which were issued in lieu of payment in cash.  On said vouchers at various dates sundry payments have been made, and also indicated in the schedule, but on said vouchers there are balances due and unpaid as principal and also amounts claimed to be due as interest from the dates of maturity to date, making the amount claimed to be due for both principal and interest the amount indicated in the column of the schedules marked "Total."

4. Said contractors, other than the plaintiff, prior to the bringing of this suit duly signed, sold, transferred and set over to the plaintiff in said suit all their right, title and interest, both legal and equitable, in the reserve vouchers now in controversy, so that the said plaintiff has become and is now the legal holder of the same, entitled to the satisfaction of all demands and claims growing out of and existing by virtue of the same in the same manner and to the same extent as the said contractors before the assignment. Copies of said instruments of assignment are attached hereto and marked Exhibits 18 to 20.

5. Although the contractors, the original holders, or the plaintiff, the assignee of said vouchers, after the date of maturity of each of the same and again just prior to the bringing of this suit, demanded of the proper officers of the city that they pay said vouchers, the city had failed and refused to pay the same or any part thereof except as indicated in the schedule hereinbefore referred to and made a part of this stipulation.

6. The vouchers sued upon may be divided into two main classes.

### CLASS "A."

Vouchers on which it is stipulated that the city has collected sufficient moneys to pay the same, but has applied the moneys so collected to other purposes.

### CLASS "B."

Vouchers where property assessed for the improvement has been returned delinquent for the non-payment of such assessment and the city has, in default of other bidders, become the purchaser of such delinquent property and acquired tax certificates against the same, the amounts of such tax certificates being in each case in excess of the amounts due on the respective vouchers remaining unpaid; but has not paid into said respective special assessment funds the amounts which it bid for said pieces of property respectively.

The vouchers under Class "A," that is, the vouchers in which the city has collected sufficient moneys to pay the same, but has applied the moneys so collected to another purpose, fall into two sub-classes:

(a) Vouchers on which the city has paid rebate to property owners assessed before paying the cost of the improvement, the amount of such rebates in the case of each specific voucher exceeding the amount claimed on said vouchers. These vouchers are shown in schedule "A."

(b) Vouchers on which moneys retained out of the first installments for the purpose of paying the reserve on the same has been applied to the payment of interest on bonds issued against the second and subsequent installments, the amount of such payments in the case of each specific voucher exceeding the amount claimed on said vouchers. These vouchers are shown in schedule "B."

The vouchers shown under class "B" are shown in schedule "C."

### EXHIBIT 1, CONTAINING SCHEDULES "A," "B," AND "C."

Schedule "A," including warrant Nos. 19330, 21597, 24030, 24032, 24035, 24036, on which a balance remains unpaid of $1,763.18, with interest computed from the date of maturity of said vouchers at 5 per cent, amounting to $730.88.

Schedule "B," containing vouchers, warrant Nos. 21611, 22593 and 23966. The amount of principal unpaid on these vouchers is $838.87, and the amount of interest at 5 per cent from the date of maturity of vouchers is $541.71.

Schedule "C," containing warrant numbers 23343, 23866 and 24078. The principal unpaid on these warrants is $171.41; and the interest from the maturity of the vouchers at 5 per cent is $101.47. This schedule also shows that the amount of the tax certificates acquired by the city at the delinquent special assessment sales is $1,883.09.

The vouchers are substantially the same as the one which follows:

ORIGINAL RESERVE VOUCHER.

OFFICE OF

BOARD OF LOCAL IMPROVEMENTS,

Bureau of Streets.

Warrant No. 19330.
Estimate No. 4 and 5:

Chicago, July 30, 1900.

I hereby certify that Burmudez Asphalt Paving Co. is entitled to the sum of Eleven Hundred Seventy-seven and $^{49}/_{100}$ Dollars, on account of reserve, as per contract dated Aug. 22, 1894, for improving La Salle avenue from Division to Clark with asphalt.

Work was finished Nov. 2, 1894.

Reserve expires by limitation paving 1896.

Total number of yards of paving, 14,718.57.

Total number of feet of curbing . . . . . . . . . . . . . . .

Total amount of reserve on contract . . . . . : . . . . . . . $3,477.02

Less . . . . . . . . cents per yard on total quantities of
    paving reserved as per contract, $ . . . . . . . . . . . .

Less . . . . . . . . cents per foot on total quantities of
    curbing reserved as per contract, $ . . . . . . . . . . .

Balance . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $3,477.02
Less amount paid on former reserve vouchers Nos.
    1, 2 and 3 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . $2,299.53

Net amount of reserve due at this date . . . . . . $1,177.49

I hereby certify that on June 30, 1900, I personally examined the curbing and pavement laid on the above named street between the points named and found the same in good condition.

E. E. RAY,
Official Inspector.

Approved:
GEO. K. WHEELOCK,
    Chief Engineer, Bureau of Streets.

I hereby certify that no voucher has been heretofore issued in payment of this work.

J. P. DAUGHERTY,
Chief Clerk, Bureau of Streets.

Approved:
M. J. DOHERTY,
Superintendent, Bureau of Streets.

Audited and entered:
JAMES F. O'CONNER,
Bookkeeper, Board of Local Improvements.

Approved:
L. E. McGANN,
Comm'r of Public Works and President Board of Local Improvements.

In consideration of the issuing of this voucher we hereby for ourselves, heirs, executors, administrators and assigns accept the same in full payment of the amount herein stated, and relinquish any and all claims or liens that we may have against the City of Chicago for the work mentioned herein, or for the payment of this voucher, except for the collection of the warrant herein named.

BURMUDEZ ASPHALT PAVING CO.,
Per P. M. GARROD,
Secretary.

The vouchers in question were assigned to the Barber Asphalt Company, which brings this suit. The court assessed plaintiff's damages at the sum of $4,170.82 and entered judgment accordingly.

GEORGE A. MASON and FRANK JOHNSON, JR., for appellant; EDWARD J. BRUNDAGE, of counsel.

TOLMAN, REDFIELD & SEXTON, for appellee.

MR. JUSTICE FREEMAN delivered the opinion of the court.

It is first contended in behalf of the city of Chicago that the special assessment vouchers in controversy are payable solely out of their respective special assessment funds, and

that the city cannot legally pay them out of its general funds, inasmuch as section 90 of the Local Improvement Act (R. S. chap. 24) provides that persons accepting the vouchers "shall have no claim or lien upon the city, town or village in any event for the payment of such vouchers or bonds or the interest thereon, except from the collection of the assessments, against which such vouchers or bonds are issued." The municipality is required by said act to use " all reasonable diligence as far as it can legally do so" to cause valid special assessments to be levied and collected to pay such bonds and vouchers until they shall all be fully paid. The vouchers now in controversy contain a provision signed by the payees therein, wherein the latter accept the same in full payment of the amount in said vouchers named and relinquish all claims or liens against the city for the work therein mentioned or for the payment of the vouchers except from the collection of the warrant in said voucher named. It does not follow, however, that where a deficiency in the special assessment funds applicable to the payment of the vouchers is caused by reason of an unlawful diversion and misapplication by the city of such funds from the purpose for which they were collected, thus leaving such vouchers unpaid, that the holder cannot recover from the city. The same contention made in behalf of the city was considered in City of Chicago v. Union Trust Company, 138 Ill. App., 545. There also it was insisted that vouchers of this kind "are payable solely out of their respective special assessment funds and the city of Chicago cannot legally pay them out of its general funds," that there were no such funds in the city's hands and that the city had no power to appropriate any for payment of the vouchers. In that case we held that there being evidence tending to show the city did in fact hold funds to the credit of the warrants which upon a proper accounting should be applied in payment of the vouchers, the fact that the city had disbursed such funds for other and improper purposes did not relieve it from the obligation to account for and pay them to the respective voucher holders, so far as applicable. If the city has in fact collected the assessments for payment

of the vouchers as the statute requires, it is bound to pay them "from the collection of the assessments" against which such vouchers or bonds are issued, and is not relieved of its liability to account for such funds as trustee thereof because of its own improper administration of them.

It is further argued in behalf of the city that where rebates to property owners have been paid before the cost of the improvement had been paid for, no liability is thereby created against the general funds of the city, that this is one of the risks which the contractor or voucher holder assumes when he agrees to look to the special assessment funds alone for payment and not to the general funds of the municipality. In this contention we have heretofore stated our inability to concur. City of Chicago v. Union Trust Company, *supra*. The vouchers to which this contention is sought to be applied are referred to in the stipulation as class A. As to them it is stipulated that the city has collected sufficient moneys to pay them, but has applied the money so collected to another purpose, namely, payment of rebates to property owners assessed for the improvement, before the payment of the cost of the improvement itself. As to these specific vouchers it is conceded that the amount applied in payment of such rebates exceeds the amount due on the vouchers. It is apparently conceded that these rebates were irregular and improper, and it is, we think, clear that no official of the special assessment department of the city could lawfully reduce or modify in any way the assessment as confirmed by the court. Counsel for the city, however, maintain that whether such rebates were properly or improperly made is wholly immaterial because of the statutory provisions which it is claimed compel the voucher holders to look for payment solely to the special assessment fund, and it is argued that such voucher holders assume all risk of the city's failure properly to administer the assessment funds. The very statement of this proposition would seem to carry its own refutation. . It is the duty of the city to pay rebates to the property owner under the conditions prescribed by statute, that is when "there shall be any surplus remaining of said

special assessment over and above the payment aforesaid."
(Article IX of the Cities and Villages Act, section 65.)
It is not the voucher holder but the city which must be
deemed accountable for official mistakes of its officers in ad-
ministering the fund.    It is the city, not the voucher holder,
which as trustee must be deemed responsible for its own ad-
ministration of the fund of which it is custodian.    Potter
v. Whatcom, 20 Wash., 589.    The voucher holder has a
right to rely upon the proper administration by the city of
the fund out of which his voucher must be paid.    We dis-
cover nothing in the express language nor manifest intent
of the statute which is properly subject to any other inter-
pretation.    As said by Mr. Justice Brown of the Appellate
Court of this district in City of Chicago v. Richard F. Con-
way, 138 Ill. App., 320: "We are of opinion that the city
as trustee and bailee of this fund is directly liable to the
appellee up to the amount of the obligations held by him,
if the fund in its hands out of which said obligations are
by their terms to be paid is actually in its hands or is con-
structively in the purview of the law so in its hands."    And
it is further said in the opinion in that cause that the
city is not in a situation to claim that amounts so "rebated"
or "refunded" or "abated" "were anything but unlawful and
unwarranted disbursements from the fund which belonged
to the obligation holder.    If they were unlawful and un-
warranted disbursements, they were unlawful diversions,
and if the amount of them was unlawfully diverted, it was,
when demanded by the appellee from the city, unlawfully
withheld from him."    What is said in Warner v. New Or-
leans, 167 U. S., 467, is, we think, in point:    "One who
purchases property and pays for it in warrants drawn upon
a particular fund the creation of which depends largely on
his own action, is under an implied obligation to do what-
ever is reasonable and fair to make that fund good.    He can
not certainly so act as to prevent the fund being made good
and then say to his vendor: 'You must look to the fund and
not to me.'"    We deem it unnecessary to distinguish cases
cited by the defendant city in support of the views urged

by its counsel, such as city of Alton v. Foster, 207 Ill., 150–161; City of Chicago v. Brede, 218 Ill., 528, and others. It suffices to say we do not regard them in point in this controversy.    What was said by this court in City of Chicago v. Singer, 116 Ill. App., 559–563, is, we think, in large measure applicable in the case at bar.    See also City of Chicago v. McCormick, 124 Ill. App., 639.

It is contended in behalf of the city that special assessment vouchers are not limited to payment from the installment of an assessment against which they may be issued, but may be paid out of any installment at any time, without reference to whether such payment out of another installment. may have the effect to absorb all the fund against which other vouchers may be outstanding.    In City of Chicago v. Union Trust Company, *supra,* we had occasion to consider this question and expressed the opinion "that each installment is properly chargeable only with its own expenses" in view of the provisions of the statute.    Payment of "any voucher or bond out of an installment having a surplus to its credit, other than the one against which the same is issued" is provided for by section 86 of the Local Improvement Act of 1897.    Where there is no such surplus such provision is inapplicable.    In the present case that provision of that Act is not applicable, these assessments having been confirmed before its enactment.    Sections 63 and 64 of article IX, Cities and Villages Act, are applicable in this case and, in our opinion, are not subject to any such interpretation, as counsel for the city seem to claim.

It is further urged in behalf of the city that "where a municipality in default of other bidders becomes the holder of tax certificates on property sold to enforce the collection of delinquent special assessments, such tax certificates cannot be treated as cash assets in the special assessment funds; nor is a municipality liable out of its general funds to holders of special assessment vouchers to the amount of such tax certificates."    It appears from the agreed statement of facts that in cases where property assessed for improvements in payment for which some of the vouchers sued upon were

issued, has been returned delinquent for non-payment of such assessments the city, in default of other bidders, has become the purchaser of such delinquent property at the sale and has acquired tax certificates therefor; that in each case the amount due on such tax certificates is in excess of the amount remaining unpaid on said vouchers; and that the city has not paid into the said respective special assessment funds the amounts which it bid for such pieces of property respectively. It is urged in behalf of the city that inasmuch as it is "but an instrumentality selected by the law to receive payment of the special assessment from the property owners and to pay the same to the holders of the vouchers" (Village of Wilmette v. People, 214 Ill., 107–111) the city acquired these tax certificates only in a trust capacity for carrying out the provisions of the special assessment act and not in its general corporate capacity. The distinction is, we think, attempted where there is no difference. The provisions of sections 70, 71 and 72 of the Local Improvement Act authorize the city in default of other bidders to become a purchaser at sales of property to enforce collection of any tax or special assessment, and make "the general revenue laws" of the State "and all other laws in relation to the enforcement and collection of taxes and redemption from tax sales" except as in the Local Improvement Act provided, "applicable to proceedings to collect such special assessments and special taxes." Sections 206 and 207 of the Revenue Act provide for resale of the property in case the purchaser at such sale shall fail to pay the amount and for delivery of the certificate of purchase to the purchaser, which certificate is required to recite the amount of the "special assessments, interest and costs for which the same was sold, and that payment has been made therefor." We concur therefore in the plaintiff's contention that having taken out tax certificates reciting that it has paid the amount of the assessment, interest and costs, the city is estopped from contradicting such recitals, that the judgment confirming the assessment must be deemed satisfied by the sale and purchase and the city thereafter becomes liable to apply the amount of the

purchase to the assessment fund and in payment of liabilities against such fund. As we said in City of Chicago v. Union Trust Company, *supra*: "If such sale is made to a private individual he would be required to pay the amount bid at the sale upon receiving his certificate of purchase or a tax deed. No reason is apparent why there should be any distinction between a municipality and an individual in this respect."

It is contended that the city is not liable for interest on vouchers after their maturity. In City of Chicago v. Conway, *supra,* it was held that the municipalities become "liable for interest in three cases—where there is an express agreement, where money has been wrongfully obtained by them and where money is illegally withheld by them," citing Vider v. City of Chicago, 164 Ill., 354; City of Peoria v. Construction Co., 169 Ill., 36; City of Danville v. Danville Water Co., 180 Ill., 235. In the case at bar the amounts refunded to the property owners and the amounts which should have been applied by the city in payment of its purchases at tax sales in cases where the vouchers in controversy are unpaid were, we think, "illegally withheld" when the city refused payment of the vouchers at their maturity.

For reasons indicated the judgment of the Superior Court will be affirmed.

*Affirmed.*