## L. M. Murrie et al., Appellees, v. L. L. Harper, Appellant. (Two Cases.)

Opinion filed July 16, 1928.

H. A. EVANS and BRANNAN, MALONEY & WOOSTER, for appellant.

JOHN W. BROWNING and S. B. KERR, for appellees.

MR. JUSTICE WOLFE delivered the opinion of the court.

These causes, in which bills for injunctions were filed by complainants as taxpayers on behalf of themselves and all other taxpayers, come to this court on appeals from decrees of the circuit court of Massac county permanently restraining the city of Metropolis from paying any further sums of money to appellant

out of the general treasury of said city for engineering services rendered or to be rendered by appellant in certain local improvements mentioned in the decrees.

On August 24, 1925, the city of Metropolis entered into an agreement with the appellant in which it was agreed that appellant would furnish all necessary plans, specifications and estimates of cost and all engineering services for the construction and completion of certain proposed, and any other, local improvements that said city might authorize, for five per cent of the total cost of said improvements, two per cent of the estimated cost to be payable when the plans, specifications and estimates of cost were delivered, one per cent upon confirmation of the assessments, and the balance of two per cent to be paid as the work progressed; and that in the event that said improvements should be abandoned before confirmation, said appellant should accept said initial payment of two per cent in full payment for his services.

Appellant thereafter prepared and delivered plans, specifications and estimates of cost in connection with an improvement designated as "Paving District No. 1," which were accepted and used by the board of local improvements in the preparation of a resolution recommending the making of the improvement and, after a public hearing upon said resolution, in the preparation of a final resolution passed by said board of local improvements resolving that said improvement as shown by said plans, specifications and estimates of cost be made and a draft of an ordinance for the construction of said improvements in accordance therewith was then prepared by said board, which ordinance together with said plans, specifications and estimates of cost were thereafter submitted to the city council with a recommendation that said ordinance be passed and the city council of said city thereafter passed said ordinance approving said plans, specifications and estimates of cost, being ordinance No. 701, section 3 of

which ordinance provided that the whole cost of said improvement including the sum of $16,000, being the amount included in the estimate of the president; attached thereto, as court costs and necessary lawful expenses in such behalf, be paid for by special assessment.

On December 14, 1925, the city council authorized the borrowing of $5,000 with which to pay engineering fees, assessor, and clerk hire, and thereafter said sum was borrowed from the First National Bank of Metropolis, Illinois, for which a warrant was issued to said bank which did not on its face provide for its payment out of any particular fund. Out of said $5,000 said city paid $4,000 to appellant for engineering fees, leaving a balance due on the initial payment of two per cent of something over $3,000.

Thereafter said improvement ordinance No. 701 was repealed on recommendation of the board of local improvements and the improvements abandoned.

On May 24, 1926, said city and appellant entered into a new contract reciting that said prior improvement had been abandoned, and that a new district designated as "Paving Improvement No. 1" had been laid out and adopted by the board of local improvements and in which it was agreed that appellant should receive the balance due of $3,226.85 on account of the two per cent earned by him in said proceeding which had been abandoned, and three per cent of the cost of said new improvement designated as "Paving Improvement No. 1" (one per cent of said three per cent to be paid upon confirmation and the remaining two per cent upon completion and acceptance of the work), in full payment for his services in both of said improvements.

Subsequent to the making of said last-mentioned contract, appellant prepared the necessary plans, specifications and estimates of cost for the construction of said improvement designated as "Paving Improvement

No. 1,'' and thereafter, upon recommendation of said board of local improvements, the city council passed an ordinance, being ordinance No. 706, providing that the whole cost of said improvement, including the sum of $6,000 being the amount of the estimate the president of the board of local improvements thereto attached, as cost of making, levying and collecting the assessment and necessary lawful expenses, be paid for by such special assessment. Subsequently said ordinance No. 706 providing for said ''Paving Improvement No. 1'' was repealed on advice of the board of local improvements and said proposed improvement abandoned.

Thereafter appellant prepared the necessary plans, specifications and estimates of cost for another proposed improvement also designated as ''Paving Improvement No. 1'' and an ordinance, being ordinance No. 712, providing for said improvement, was thereafter duly passed by the city council on the recommendation of said board of local improvements, and afterward said ordinance No. 712 was repealed on the advice of the board of local improvements and said improvement abandoned.

Thereafter appellant prepared all necessary plans, specifications and estimates of cost for a new improvement designated, as was the first improvement, ''Paving District No. 1'' and an ordinance was duly passed by said city council on the recommendation of said board of local improvements, in accordance with said plans and specifications, and upon a petition being filed in circuit court of Massac county an order confirming said assessment was entered in said court on the same day that the decrees in these causes were entered.

The fiscal year of the city of Metropolis begins on the 1st day of July of each year and the annual appropriation ordinance for the year commencing July 1, 1925, did not contain any definite item for engineering

services, but did contain an item "For Streets, Alleys and Sidewalks—$20,000.00"

The annual appropriation ordinance for the year beginning July 1, 1926, contained, among others, the following items:

| | |
|---|---:|
| Engineering services, Streets, Alleys and Sidewalks | $15,000.00 |
| Electrical and Civil Engineering services | 4,000.00 |
| Engineering services for new sewer system | 9,000.00 |
| Legal services | 5,000.00 |
| Assessor, Clerk and Stenographic services | 5,000.00 |

In case term No. 2, the court, after finding in its decree that the contract had been entered into, the services rendered, an ordinance passed for the improvement in accordance with the plans, specifications and estimates of cost, providing that the whole cost thereof be paid for by special assessment, that no appropriation had been made by the city for said services and that appellant had been employed to perform the services rendered but that he was not employed as a regular city engineer, entered a decree permanently restraining the city from paying appellant any further sums of money out of its general treasury and ordered the city to reimburse itself for the moneys already paid to appellant on account of services rendered in the abandoned proceeding out of a fund created by a subsequent proceeding confirmed by said court on the same day the decrees in these cases were entered.

In case term No. 1, the court, after finding that the second contract had been entered into, that the services in the new improvement had been performed and an ordinance providing for the making of said improvement, and the payment therefor by special

assessment had been passed and afterwards abandoned by the city, found that appellant was not entitled to any compensation for said services out of the general funds of the city and that the city had no power to pay appellant out of the general funds for said services, and entered a decree permanently restraining the city from paying any money out of the general treasury to appellant for his services in connection with said improvement.

Appellant has assigned as error that both of said decrees were contrary to the law and contrary to the evidence.

Originally there were two cases, but the questions involved are practically the same in each case, so, by consent of all the parties the cases have been combined, and in discussing the case we will refer to it as a single case.

It is contended by the appellee that the city of Metropolis could not legally pay the appellant for the services he had rendered as such engineer in making the plans and specifications for these improvements for the reason that there had been no appropriation or tax levied for that purpose, prior to the time that Mr. Harper was engaged as such engineer to do the work in question.

The facts in the case are not in dispute, and the city apparently is willing to pay Mr. Harper for his services, recognizing his claim as a legal and valid claim. There is no contention that the charges that Mr. Harper has made are unjust or unreasonable. So it becomes a question whether the city in this case has exceeded its authority in hiring Mr. Harper and whether there was any appropriation made by the city, which could legally be used for the payment for these services.

The case of *People v. Clark,* 296 Ill. 52, is a case in which an objection was made to the tax levy, the first contention being that the appropriation and levy

is for more than one purpose without designating separately the amount for each purpose. The appropriation ordinance and tax levy ordinance of the city of Chicago contain the following: "For cleaning of streets, collection and removal of garbage, ashes and miscellaneous refuse, and for the repair of unimproved streets, sidewalks and miscellaneous street work, and for the maintenance and operation of buildings and equipment in connection therewith, $3,510.00."

In passing on the objection the court says: "The law requiring that when a city tax is levied for several purposes the amount for each purpose shall be stated separately does not require that each particular item for which the tax is levied shall be separately stated. There is no valid objection to levying a gross sum for several different purposes where the several purposes are properly embraced within some general designation. (*People v. Illinois Cent. R. Co.*, 271 Ill. 236; *People v. Chicago & A. R. Co.*, 273 Ill. 452.) This court has said repeatedly that it is neither necessary nor practicable that each particular purpose for which a tax is levied be specifically stated. The statute must receive a reasonable and common-sense construction. (*People v. Jackson*, 272 Ill. 494.) If this appropriation had been made 'for cleaning streets and alleys' it would have specified a distinct object and purpose and would have been a legal appropriation. Because the city council went further and grouped under the general heading many details embraced within the general purpose furnishes no valid ground for holding the tax levy void."

In the same case under the heading of tuberculosis sanitarium taxes, the first item was "For 1919 maintenance and operation, $1,055,000.00." The last item was "For infirmary building, $469,096.33."

The objection to the first item was that the tax was levied for more than one purpose without separately designating the amount required for each purpose,

and to the last item that it did not specify any object or purpose for which the city was authorized to make an appropriation or levy. The court overruled the objection to the first item and held that maintenance and operation meant the furnishing of sustenance and medical attention to the patients and otherwise caring for them. The lower court sustained the objection to the last item, but the Supreme Court overruled the trial court and held that the item was definite enough, and that it meant "for building a new infirmary" at the sanitarium. In the construction of such a building no doubt architect and other professional services would be required and their pay be considered a part of the expense of the erection of the building.

Village appropriation and levy ordinance need not give in detail each particular object for which the tax is to be extended, but it is sufficient if the object and purpose of the appropriation and the amount appropriated for such purpose is specified: "A levy of a certain sum for salaries of village officers, another sum for street and alley improvement and maintenance, another for election expenses, is sufficient. (*People v. Harper,* 325 Ill. 497.)"

It will thus be seen by an examination of the authorities that in making a tax levy each item need not be specifically mentioned in making an estimate, but it is proper if it naturally comes within a general class in making the appropriation. Thus in making a levy for streets, alleys and sidewalks, any item that would necessarily come within that expense would be embraced within that item and need not be specially mentioned. It then becomes a question of fact whether engineering expenses would be an item contained within the appropriation or tax levy in the city of Metropolis in 1925, and prior to the time that Mr. Harper was employed to render the service that he is now claiming pay for.

We are of the opinion that this tax levy was sufficiently definite and that engineering service could well be contemplated in doing the work of the city on its streets, alleys and sidewalks for that year, and could be paid out of the $20,000 levied for such purpose.

The appellant does not rest his case on the fact alone that there had been an appropriation made by the city of Metropolis, out of which the city could legally pay him for services that he had rendered, but does claim that the city is bound to pay him whether there had been an appropriation for that purpose or not, because he had rendered the service under a valid contract and the city had accepted the service. Therefore, the law will imply a promise and a legal obligation to pay a reasonable price for the services so rendered. The appellees contend that the city cannot legally pay for this service because there is no fund out of which to pay the same.

The case the appellees rely upon as sustaining their contention is *De Kam v. City of Streator*, 316 Ill. 123.

In this case the City of Streator entered into a contract with Clausen for the purpose of designing a sewage system for the City of Streator, and reporting a plan to the city council whereby the sewage system could be improved. There was no provision for payment for Clausen's work, so evidently the city expected him to be paid out of the general funds of the city.

The contract on its face shows that it was an illegal contract that the city council of Streator had no authority to enter into such a contract because there was no appropriation from which to pay for this service. This contract was subsequently ratified and somewhat modified by the succeeding city council. Clausen made the surveys and finished his work and presented his bill to the city council for payment. De Kam and other taxpayers of the City of Streator filed their bill in their own behalf and other taxpayers to restrain the

City of Streator from paying Clausen the amount that he claimed was due on this contract.

The court held that this contract was invalid and could not be ratified, since there was no appropriation made to pay for the service prior to the time the indebtedness was incurred, and, also, that the city had no right or authority to pay Clausen for the services that he had rendered.

In this case the city of Metropolis entered into a *valid* contract with Mr. Harper to render the service that he had performed. It is provided in the contract and also in the ordinances that were passed by the city council in approving the plans and specifications that Mr. Harper had presented that Mr. Harper should be paid, not out of the general funds of the city, but wholly from a special assessment fund. All of the ordinances in question that were passed by the city council had reference to the services rendered by Mr. Harper and were similar in this respect, namely, that Mr. Harper was to receive pay solely from the special assessment fund. Our courts have held that such contracts are valid, and when the special assessment fund has been collected, then all the expenses provided to be paid out of said special assessment, must be paid from this fund. (*People v. Village of Hyde Park,* 117 Ill. 462; *Dolese v. McDougall,* 182 Ill. 486–494; *Midland Lumber Co. v. Dallas City,* 276 Ill. 172; *City of Chicago v. Thomasson,* 259 Ill. 322; *Barber Asphalt Paving Co. v. City of Chicago,* 139 Ill. App. 121.).

In the case of *Gage v. Village of Wilmette,* 230 Ill. 428, at page 435, the court after deciding that the expenses of maintaining the board of local improvements could not be paid out of the special assessment, further say: "If, however, a person who is not a regular employé of the city or village should be hired to do special work on a particular improvement, doubtless, under this law, he could be paid for his work from that special assessment. For example, if a village does not

have a regular engineer employed at a stated salary, such a man might be hired and paid for his special work on the improvement out of the funds raised by that assessment. This is in harmony with the views expressed on this subject in *Gault v. Village of Glen Ellyn,* 226 Ill. 520.''

In the case of *Maher v. City of Chicago,* 38 Ill. 266, Maher had entered into a contract with the city of Chicago to do some work and was to be paid wholly out of the special assessment fund to be levied against the property for that purpose, but it was found that the special assessment could not be legally levied. It was held that the city would not be permitted to secure work to be done on faith of a special assessment and then avoid payment by setting up that it had no power to levy it. If it could not do what it had undertaken to do, it was bound to compensate the injured party. *City of Chicago v. DeGolyer,* 48 Ill. 416.

In the case of the *City of Chicago v. People ex rel. Norton,* 56 Ill. 327, a similar question was involved, the assessment fund failed. The court held that the city could not evade its liability on that ground and should pay for the services that they had accepted the benefit of.

The case of *Gray v. City of Joliet,* 287 Ill. 280, seems to be squarely in point with the case at bar. In the *Joliet* case, Gray was appointed by the mayor of the city to prepare two assessment rolls. A hearing was had in the county court on the assessment roll and the proceedings were dismissed by the city. For spreading the assessment and preparing the roll for the proposed improvements Gray was to be paid out of the fund derived from the special assessment. He was not so paid. He brought his action in assumpsit for the amount he claimed due for his services in preparing these assessment rolls. The court in passing upon this case after a review of numerous cases conclude with saying: ''Without extending this discussion further, it is our conviction that while a city having a

population of less than 100,000 may by ordinance, * * * provide for the payment of the expense of levying an assessment from the fund produced by levying it, it cannot relieve itself from liability to pay the reasonable expenses incurred where the city itself voluntarily abandons and dismisses the proceeding before judgment of confirmation."

What the Supreme Court say in their discussion of the *Gray* case seems to us to be wholly applicable to the facts and law in the case at bar.

In the *Joliet* case Gray was lawfully appointed to spread this assessment roll, and agreed to take his pay from the fund derived from the special assessment, but the city council by their own act destroyed the fund from which he should be paid. In the case at bar the city of Metropolis entered into a lawful contract with Harper to render the service he performed, and he agreed to look wholly to the special assessment fund for his pay, but the city of Metropolis, by their city council, has destroyed the fund and made it impossible for Harper to receive his pay from that fund. No appropriation need be made prior to the execution of the contract between the parties when the contract itself show that payment shall be made from proceeds of the special assessment fund.

Mr. Harper and the city of Metropolis, each acted in good faith in all of their transactions. The city has received and accepted the benefits of the services rendered by Mr. Harper and should not be enjoined from paying him for the same.

We do not deem it necessary to discuss the other points raised by the appellant, as we think the points decided dispose of the others raised by him in his brief and argument.

The judgment of the circuit court of Massac county, in each of these cases, is hereby reversed and the cause remanded, with directions to dissolve the injunction and dismiss the bill for want of equity.

*Reversed and remanded with directions.*