Robert P. Vail, Walker H. Mills and Thomas H. Armstrong, Partners Practicing Law under the Firm Name of Vail, Mills and Armstrong, Plaintiffs-Appellants, v. City of Paris, Edgar County, Illinois, Defendant-Appellee.

Gen. No. 9,789.

Opinion filed November 6, 1951. Released for publication December 3, 1951.

VAIL, MILLS & ARMSTRONG, *pro se,* and BOOKWALTER, CARTER, GUNN & HICKMAN, of Danville, for appellants.

PAUL B. LAUHER, and COTTON & MASSEY, of Paris, STEVENS & HERNDON, of Springfield, for appellee; ROBERT F. COTTON, and ROBERT L. GIBSON, both of Paris, and ELMER NAFZIGER, of Springfield, of counsel.

MR. PRESIDING JUSTICE O'CONNOR delivered the opinion of the court.

On April 15, 1940 the plaintiffs, a law firm at Decatur, Illinois, entered into a contract with the City of Paris, Illinois, to do certain designated legal work as special counsel in connection with a municipal utility proposed to be constructed by the City. Under the terms of the contract plaintiffs were to receive 3% of the cost of the project for their services, payable out of the proceeds of the sale of public utility certificates to be issued.

In the spring of 1940 the cost for the plant was estimated to be $820,000.

An ordinance was passed on August 26, 1940 which contained provisions that the bonds to pay for the construction of the utility were to mature in blocks beginning December 1, 1945. A second ordinance was passed calling an election to submit the matter to the electors for their approval or rejection. The ordinance was approved by vote of the electors. Considerable litigation followed, including two appeals to the Supreme Court, all of which was conducted by the plaintiffs. Finally, on September 21, 1942 the litigation was concluded, but at that time, due to the scarcity of materials and labor, work could not proceed without government priority orders. The City was not able to secure the priorities.

By the summer of 1945 the war was over, and an estimate was made by the engineers that the plant and distribution system could be built within the original estimate. However, it was doubted that the bonds which were to mature December 1, 1945 could be sold within such a short time prior to their maturity. Therefore, the old ordinance was amended changing the dates of maturities of the bonds.

The amendatory ordinance was submitted to a referendum held in December 1945. The amendment was not approved.

In January of 1947 the engineers made a new estimate and due to rising costs, determined that the plant and distribution system would cost $1,400,000, instead of $820,000 as originally estimated.

In April 1947, one of the commissioners was elected mayor and four new commissioners were elected who had never served before.

In September 1947, a conference was held with the plaintiffs and the members of the council. The mayor and one commissioner stated they would like to go ahead with the project if it could be built as originally planned and at the original cost. One commissioner stated that he was opposed to the project. Two other

commissioners thought that the project had been voted down by the people at the election of 1945.

In May 1948, plaintiffs had a conference with the city attorneys and presented their bill for services. After the City had failed to do anything for a year, plaintiffs filed suit on May 27, 1949.

The matter was heard before a jury in the circuit court of Edgar county which returned a verdict finding the defendant not guilty. Plaintiffs filed a motion for judgment notwithstanding the verdict and for new trial, both of which were overruled. Judgment was entered on the verdict. Plaintiffs appeal from those rulings.

██ There does not appear to be any dispute about the general proposition of law that if a municipality undertakes a public work to be paid for not out of its general fund, but out of the revenue of the public work when completed or revenue securities to be issued, and in the prosecution of that undertaking employs attorneys or engineers to be paid out of such special fund only, and before its completion the municipality abandons such public work, it becomes liable to pay for the services rendered by such attorneys or engineers out of its general funds, and such attorneys or engineers are not required to look for payment to the special fund which may be nonexistent. Plaintiffs have cited the following cases in support of this proposition: *DeLeuw, Cather & Co. v. City of Joliet,* 327 Ill. App. 453; *DeLeuw & Co. v. City of Charleston,* 298 Ill. App. 403; *Gray v. City of Joliet,* 287 Ill. 280; *Woods v. Village of LaGrange Park,* 298 Ill. App. 595, 617; *Murrie v. Harper,* 249 Ill. App. 586; *Markman v. Calumet City,* 297 Ill. App. 531; *Chalstran v. Board of Education, Dist. 13,* 244 Ill. 470; *Bunge v. Downers Grove Sanitary Dist.,* 356 Ill. 531; *Maher v. City of Chicago,* 38 Ill. 266.

We have examined these cases and they sustain the proposition for which they are cited. The defendant

has not even questioned the proposition or attempted to distinguish the cases. The defendant contends that it is not liable because of the terms of the contract which it made with the plaintiffs and calls attention particularly to section 6 thereof, which is as follows:

"6. It is mutually agreed that (a) if the acquisition and operation of said public utility shall not be approved by the electors of City, (b) if the issuance of said public utility certificates shall not be approved by the electors of City, or (c) if subsequent to elections approving the acquisition and operation of such public utility and the issuance of said public utility certificates, City shall be required to abandon or desist from the acquisition and/or operation of said public utility by final judgment, order or decree of any court of competent jurisdiction in a proper proceeding, and City, in compliance with such judgment, order or decree, shall abandon or desist from the acquisition and/or operation of said public utility, City shall not be obligated nor liable, out of its general funds, to pay any compensation to Special Counsel for services theretofore rendered by them and required of them by the terms of this agreement, but nothing herein contained shall be held or construed to release City from its liability to compensate Special Counsel for services performed by them under this agreement, if after the approval of the acquisition and operation of said public utility and the issuance and disposition of said public utility certificates by a majority of the electors of City, City shall voluntarily abandon or refuse further to proceed with the acquisition of said public utility or the operation thereof or the issuance and disposal of said public utility certificates."

The theory of plaintiffs' case is that they seek recovery not upon the basis of the contract, but on the basis of *quantum meruit.*

Despite this fact, it is possible that even though the plaintiffs do not seek to recover on the basis of the

contract, that plaintiffs may have contracted away their right to recovery and it is important to analyze the contract to see if this is so. Defendant states that by virtue of section 6 set forth above, plaintiffs can recover only if they prove that the City *voluntarily* abandoned the project. Section 6 specifically sets forth that the City would not be obligated or liable out of its general funds to pay any compensation to plaintiffs for services rendered by them if any one of the following three things occurred:

(1) If the acquisition and operation of said public utility should not be approved by the electors;

(2) If the issuance of said public utility certificates should not be approved by the electors;

(3) If the City should be required to abandon or desist from the acquisition of said utility by final judgment, order or decree of any court.

The contract then goes on to state that nothing contained therein should be held to release the City if, after the approval of the project by the electors, the City should voluntarily abandon the project.

 No one of the three conditions set forth above occurred, which, under the terms of the contract would relieve the defendant from liability. Defendant seeks to rely on a portion of a clause in the contract which contained no release from liability, but was a denial of a release from liability. Therefore, we conclude that there is nothing in the contract which limits the right of the plaintiffs to recover.

The cases cited by the defendant with reference to the construction of contracts are not in point, as in this case there is no language of dubious meaning to be construed against the person who drew the contract.

 We do not believe that it can be denied that the defendant has abandoned the project. Certainly, after ten years have elapsed and the City is still making no effort to proceed with the project, it must be deemed to be abandoned. It would have been simple

for the City to urge as a defense, if it has not abandoned the project, that it was willing to proceed with the project and plaintiffs would probably be satisfied with this for they would be entitled to recover their fee based on the contract rather than on *quantum meruit*.

The case of *Woodruff v. City of Chicago*, 394 Ill. 542, is analogous to the present situation. In that case the court held that there had been an abandonment when the evidence showed that the City was waiting for an opportune time to proceed with the improvement. This was the substance of the testimony most favorable to the defendant in this case, the mayor and one commissioner stating that they were willing to proceed with the project when it could be done based on the original estimate. This means that no time has been fixed because there is no way of determining when the utility can be constructed at this cost and, therefore, the project has been abandoned, and plaintiffs are entitled to recover on a *quantum meruit* basis.

■ Instructions Numbers 1, 2 and 3 tendered by the plaintiffs properly represent their theory of the case and should have been given.

Plaintiffs also raise the question that the lower court erred in denying their motion to strike the jury demand.

■■ On June 11, 1949, nine days prior to the return day, the defendant appeared in court by its city attorney and orally requested an extension of time in which to plead. The trial court granted a thirty-day extension. On July 16, 1949, a demand for a bill of particulars was served on plaintiffs, and on July 18, 1949, defendant filed its demand for trial by jury. Plaintiffs moved to strike this demand on the ground that such demand was not filed within the time required by statute. Section 64 of the Civil Practice Act (Ill. Rev. Stat. 1949, ch. 110, par. 188) [Jones Ill. Stats. Ann. 104.064] provides:

" . . . a defendant desirous of a trial by jury shall make such demand and file the same at the time of filing his appearance . . ." Section 59 of the Civil Practice Act (Ill. Rev. Stat. 1949, ch. 110, par. 183) [Jones Ill. Stats. Ann. 104.059] states:

"Additional time may be granted on good cause shown, in the discretion of the court and on such terms as may be just, for the doing of any act or the taking of any step . . ."

Supreme Court Rule 8, par. 5 (Ill. Rev. Stat. 1949, ch. 110, par. 259.8) [Jones Ill. Stats. Ann. 105.08] is to the same effect. The grant of additional time to the defendants in which to plead did not expressly or by implication extend the time for filing a jury demand. No extenuating circumstances are indicated which would justify the trial court's action in departing from the provisions of section 64 of the Practice Act. It cannot be said that the nature of the case was such that a trial by jury was required.

*Stephens v. Kasten,* 383 Ill. 127, is cited in support of the trial court's action. However, in that case an attorney representing the defendant's insurance carrier filed a motion to dismiss on behalf of the defendant, but carelessly failed to make a timely demand for jury trial; thereafter defendant employed his own counsel, who at once filed an answer and a written demand for jury. Because the primary interest of the defendant's original counsel was the protection of the insurance company which employed him, the Supreme Court held that the circumstances justified granting a belated jury demand when it was made on behalf of the individual defendant by his own attorney when he first appeared. In *Mason v. Continental Distributing Co., Inc.,* 333 Ill. App. 128, plaintiff's complaint contained a jury demand, but he failed to pay the necessary jury fee. Defendant assumed in good faith that the fee had been paid. It was, therefore, held an abuse

of discretion to refuse defendant's demand for a jury made after he had filed a motion to dismiss the complaint. The facts in the above two cases are clearly distinguishable from those in the instant case where no justification was shown for the failure to make a demand for jury trial at the time defendant made its first appearance. A dictum in *Osgood v. Skinner,* 186 Ill. 491, 496, suggests that liberal withdrawal of a waiver of jury trial is within the discretion of the trial court. That case antedates the present Practice Act by a considerable period, and so far as can be determined, that dictum has been cited only in *Stephens v. Kasten, supra,* a case unique on its facts.

We have examined the cross-errors assigned by the defendant and find no merit in them.

Therefore, this cause is reversed and remanded for a new trial to be heard before the court without a jury.

*Reversed and remanded with directions.*